L. J. MEISEL

*v.*

TRI-STATE AIRPORT AUTHORITY, *et al.*

(CC 778)

Submitted February 13, 1951.   Decided March 1, 1951.

530

*J. W. St. Clair,* and *St. Clair & McComas,* for plaintiff.

*Okey P. Keadle,* for defendants.

RILEY, JUDGE:

In this suit in equity brought in the Circuit Court of Cabell County by L. J. Meisel, a resident, citizen and qualified voter of Wayne County, and a freeholder and taxpayer in Wayne and Cabell Counties, who sues on behalf of himself and all other taxpayers and persons similarly situated in the County of Wayne and the County of Cabell, against Tri-State Airport Authority, Frank Heiner, Artie Holley, W. W. Payne, Campbell Neal, Oscar Watts, S. P. Fry, Paul C. Shingleton, Henry J. Stark, and Walker Long, the individual members of said Authority, the plaintiff seeks to test the validity of Chapter 142, Acts of the Legislature, 1949, and to have the same decreed unconstitutional, null and void, and asks that the circuit court award an injunction directed to the defendants restraining them from doing any acts furthering the issuance or sale of any revenue bonds issued under said Chapter 142, and from pledging any of the income derived from the properties purported to be owned and managed by the Tri-State Airport Authority, and the doing of any acts in furtherance thereof.

The Circuit Court of Cabell County on the joint application of the parties certified its rulings in sustaining the defendants' demurrer to plaintiff's bill of complaint, and in overruling plaintiff's motion that the circuit court award the injunction prayed for therein.

On June 1, 1948, the County Court of Cabell County; the City of Huntington, a municipal corporation; the County Court of Wayne County; the City of Kenova, a municipal corporation; and the Town of Ceredo, a municipal corporation, entered into an agreement, which was also executed by Huntington Industrial Corporation, a private civic corporation, for the purpose of acquiring, equipping, constructing, maintaining, and operating an airport or landing field, under and by virtue

of Code, 8-11, as amended and reenacted by Chapter 11, Acts of the Legislature, 1947, a general statute, to be located on Twelve-Pole Creek in Wayne County, west of the corporate limits of the City of Huntington, and south of the corporate limits of the City of Kenova and the Town of Ceredo, which agreement provided that all matters pertaining thereto are to be vested in a board of nine persons, which shall be known as the "Tri-State Airport Authority"; and that the membership of said Authority shall be composed as follows: Two members appointed by the County Court of Cabell County; two members appointed by the City of Huntington; two members appointed by the County Court of Wayne County; one member appointed by the City of Kenova; one member appointed by the Town of Ceredo; and one member appointed by the Huntington Industrial Corporation. This agreement further provided that vacancies on said board should be filled by the governing body or corporation which made the original appointment.

The agreement contained other provisions dealing with the power and authority to make and adopt bylaws and regulations; to elect officers; appoint committees and fix compensation for personnel; to enter into contracts necessary for the promotion of the purposes of the agreement; to delegate any authority given to the Authority by the agreement to any of its officers, committees, agents, and employees; to apply for, receive and use for the purposes of the agreement grants in aid, donations and contributions from any sources; and that contributions by the Huntington Industrial Corporation shall be in such amounts as may be authorized by its board of directors. The agreement further provided that the title to all real estate acquired by the parties to the agreement should be taken in the name of the County Court of Wayne County, and should be held for the use and benefit of the parties to the agreement; and that all personal property should be held in the name of the Authority.

Acting pursuant to this agreement, the parties thereto caused to be acquired by condemnation proceedings in-

stituted in the Circuit Court of Wayne County by and in the name of the County Court of Wayne County, a tract of land of approximately five hundred seventeen acres of land in Wayne County, the cost of which, amounting to approximately forty thousand dollars, having been defrayed by the Huntington Industrial Corporation from funds raised by public subscriptions in and around Wayne and Cabell Counties.

Following the enactment of Chapter 142, Acts of the Legislature, 1949, filed as an exhibit with the bill of complaint, the public bodies mentioned therein, being the same public bodies which were parties signatory to the contract of June 1, 1948, undertook to create and establish the Tri-State Airport Authority as a public agency and public corporation, as provided by said Act. Thereafter these public bodies and the Huntington Industrial Corporation, by resolutions duly and regularly adopted and passed, appointed the defendants as members of the Tri-State Airport Authority. The Authority then proceeded with the work of constructing the airport on the acquired site; sought the permission and cooperation of the West Virginia Aeronautical Commission; and, in order to obtain funds made available through federal grants, applications were prepared for submission to the Civil Aeronautics Administration of the United States Department of Commerce.

The title to said Chapter 142 reads: "AN ACT creating the Tri-State Airport Authority, providing for membership therein, for the acquisition by it of real estate and personal property and the construction, maintenance and operation of an airport, granting it the power of eminent domain and tax exemption for its property, funds and obligations, and providing for contributions to its funds and the issuance of revenue bonds."

Section 1 of Chapter 142 provides that the public bodies, which were parties to the contract of June 1, 1948, namely, the County Court of Cabell County, the City of Huntington, the County Court of Wayne County, the

City of Kenova, and the Town of Ceredo, or any one or more of them, jointly or severally, are authorized to create and establish "a public agency" to be known as the "Tri-State Airport Authority". In Section 2 it is provided that the Authority, when created, and the members thereof shall constitute a public corporation and, as such, have perpetual succession; may contract and be contracted with; sue and be sued; and have the use of a common seal. In Section 3 of said chapter the purposes for which the Authority was created are set forth, which are the same as the purposes delineated in the contract of June 1, 1948. Section 4 provides for membership of the Authority, and control of its operations, business and affairs in a board of nine or more persons, who shall be known as members of the Authority, which board in the first instance is to be appointed as provided for in said contract of June 1, 1948. Section 5 sets forth the powers of the Authority, which, in substantial detail, are the same as those set forth in said contract. Section 6 empowers the two county courts and the three municipal corporations to appoint the members of the Authority, and to contribute to the cost of acquiring, constructing, and operating the proposed airport and the appurtenant facilities. Section 7 provides that contributions may be made to the Authority by the various bodies contributing to its funds, and for the keeping of a strict account of all receipts and expenditures and for quarterly reports.

Section 8 provides: "The authority shall be exempt from the payment of any taxes or fees to the state or any subdivisions thereof or to any officer or employee of the state or other subdivision thereof. The property of the authority shall be exempt from all local and municipal taxes. Bonds, notes, debentures and other evidence of indebtedness of the authority are declared to be issued for a public purpose and to be public instrumentalities, and, together with the interest thereon, shall be exempt from taxes."

Section 9 provides: "In the event all of the public corporations contributing to the funds of the authority shall

so determine the authority shall make sale of all of its properties and assets and distribute the proceeds thereof among those contributing to its funds; or in the event such of the supporting corporations contributing a majority of the funds of said authority shall so determine the authority may lease all of its property and equipment upon such terms and conditions as the authority may fix and determine."

Section 11 provides for the liberal construction of the Act in order to effectuate the purposes thereof; and that "The provisions of this act are in addition to and not in derogation of any power existing in the county courts and municipal corporations herein named under any constitutional, statutory or charter provisions which they or either of them may now have, or may hereafter acquire or adopt."

Section 12 provides that the several sections and provisions of the act are severable and "if any section or provision hereof shall be held unconstitutional, all the remaining sections and provisions of the act shall nevertheless remain valid."

It appears that in the spring of 1950 the Authority advertised for bids for the first stage of construction of the airport, and executed a contract for approximately three hundred, eighty-five thousand dollars of the work, which work is now in process of completion.

On December 27, 1950, at a formal meeting of the members of the Authority, an order and resolution were adopted directing the issuance and sale of bonds in the amount of six hundred thousand dollars, being the amount determined by the Authority as necessary to complete its share of the work. This resolution and order provided expressly that the principal and interest of the bonds should be fully payable solely and only from the revenues of the airport; and should in no wise be considered and construed to be the debts or obligations of any of the governing bodies appointing members to the Authority. Other provisions are contained in the resolu-

tion, as well as in the bonds, usual in financing by revenue bonds, dealing with the segregation of the revenues of the airport for the purpose of operation and maintenance in the first instance, and thereafter in the retirement of the bonds. Notwithstanding the proposed bond issue was authorized under Chapter 142, Acts of the Legislature, 1949, and in accordance with the provisions thereof, the resolution and order, so the bill alleges, are also in compliance with the provisions of the general statute, Code, 8-4a, Michie's Code, 1949, that is, Chapter 68, Acts of the Legislature, 1935, as amended by Chapter 55, Acts of the Legislature, 1937; by Chapter 90, Acts of the Legislature, 1945; and by Chapter 85, Acts of the Legislature, 1949. At this point we note that the reference to Code, 8-4a is to the West Virginia Code of 1949, Annotated, published by The Michie Company, and that the statute contained in Chapter 8, Article 4a of Michie's Code, 1949, is not contained in the Official Code of West Virginia, 1931.

The bill of complaint alleges that the proposed bond issue of six hundred thousand dollars, proposed to be issued, sold, paid and retired, as set forth in the order and resolution, is invalid for the following reasons:

"(a) That by the Constitution of West Virginia no corporation can be created by a special act of said Legislature and the plaintiff charges that said act attempting to create the said Airport Authority is a special act prohibited by said constitution.

"(b) That said Chapter 142 is a special law where a general law would have been proper and could have been applicable, thus violating the provisions of Section 39 of Article VI of the West Virginia Constitution.

"(c) That the title to Chapter 142 of the 1949 Acts of the Legislature of the State of West Virginia does not express the subject matter of the act, thus violating Section 30 of Article VI of the West Virginia Constitution.

"(d) That paragraph 10 of Section 5 of said Chapter 142 purports to amend and revise Article

IV-a of Chapter 8 of the West Virginia Code by reference without setting out the sections as amended, thus violating Section 30 of Article VI of the West Virginia Constitution.

"(e) That said Chapter 142 provides for appointment to office by a county court, thus violating the provisions of Section 40 of Article VI of the West Virginia Constitution.

"(f) That the provisions of said Chapter 142 for contributions of money and property by county courts and municipalities are unconstitutional as resulting in the use and levy of county taxes for other than county purposes and the use and levy of municipal taxes for other than municipal purposes.

"(g) That the said act purporting to create said Tri-State Airport Authority, contrary to the Constitution of West Virginia, purports to exempt said Authority from the payment of any taxes or fees to the State of West Virginia or to any subdivision thereof and purports to exempt the property of said Authority from all local and municipal taxes and to exempt the bonds, notes, debentures and other evidences of indebtedness thereof from all taxes, pretending to declare the same to be issued for a public purpose and to be public instrumentalities.

"(h) That although the pretended Authority is declared to be and to constitute a public agency and corporation, it is provided by Section 4 of said Act that one member thereof shall be appointed by the Huntington Industrial Corporation, a non-profit civic corporation, by reason whereof the plaintiff and all other citizens of said counties are deprived of their right to exercise a voice in the selection of said member and therefore said Authority is not and cannot be a public corporation whose selection is controlled by the qualified voters of said counties or their elected representatives.

"(i) That the purported Act of the Legislature creating said Tri-State Airport Authority pretends to authorize said Authority to raise funds by the issuance and sale of revenue bonds in the manner provided by the applicable provisions of Chapter 68 of the 1935 Acts of the Legislature,

which said power is illegal and void for the reason that such powers cannot be delegated by a special act of the Legislature to a body such as the Tri-State Airport Authority purports to be and cannot be delegated by reference in the manner embodied in said Act.

" (j) The purported Act of the Legislature creating said Tri-State Airport Authority pretends to authorize in the discretion of the participating bodies thereof, the sale of all the property of said Authority and the distribution of the funds of said sale to the bodies constituting its membership and the leasing of all the property thereof by such of the supporting bodies contributing a majority of the funds thereto, upon such terms and conditions as the Authority may fix and determine, thus permitting the sale of property used for municipal or governmental functions contrary to law and the possibility of leasing of such property by less than a majority of the members thereof, and further that said provisions deprive the property and operation of said Tri-State Airport Authority of the character of public property or governmental nature."

In sustaining the demurrer to the bill of complaint, the court certified the following questions:

"1. Is the Tri-State Airport Authority created pursuant to the provisions of Chapter 142 of the Acts of the Legislature of West Virginia, 1949 session as a public corporation, such a corporation as may not be created by special act of the legislature, and therefore prohibited by Section 1, Article 11 of the Constitution of West Virginia?

"2. Do the provisions of said Chapter 142 granting tax exemption to the property, funds, bonds, notes and debentures of the Tri-State Airport Authority violate constitutional limitations or restrictions?

"3. Does the fact that Huntington Industrial Corporation, a non-profit civic corporation may appoint one member under said Chapter 142 deprive the Authority and its functions of their public character and violate any legal or constitutional prohibition?

"4. Does said Chapter 142 in undertaking to give the Tri-State Airport Authority the right to issue revenue bonds in accordance with provisions of Chapter 68 of the 1935 Acts of the Legislature constitute an unlawful and improper delegation of powers to the Authority?

"5. Do the provisions of Section 9 of said Chapter 142 relating to the sale or the lease of airport property deprive the Authority and its functions of their governmental character, or otherwise render said Chapter 142 illegal and void?

"6. Does the title to Chapter 142 fail to express properly the subject matter of the Act, and therefore violate Section 30, Article 6 of the Constitution of West Virginia?

"7. Does Paragraph 10 of Section 5 of said Chapter 142 violate Section 30 of Article 6 of the Constitution of West Virginia, by amending and revising Article 4-a of Chapter 8 of the West Virginia Code by reference without setting out the sections as amended?

"8. Is Chapter 142 a special law in a case where a general law would have been proper and could have been made applicable in violation of Section 39 of Article 6 of the Constitution of West Virginia?

"9. Does said Chapter 142 violate the provisions of Section 40 of Article 6 of the Constitution of West Virginia by conferring on the County Courts of Wayne and Cabell Counties the right to appoint members to the Tri-State Airport Authority?

"10. Are the uses and purposes for which contributions made by the County Courts and municipalities participating in the functions of the Tri-State Airport Authority public and governmental uses, and purposes for which counties and municipalities may properly make contributions and expend public moneys?

"11. Is there any equity in the bill of complaint filed in this cause?"

The first question presented by this record is whether the Authority is a public or private corporation. If it is

a private corporation, of course, it is in violation of Section 1 of Article XI of the Constitution, which reads: "The Legislature shall provide for the organization of all corporations hereafter to be created, by general laws, uniform as to the class to which they relate; *but no corporation shall be created by special law; * * *.*" (Italics supplied). It is argued that though the Tri-State Airport Authority was authorized by Chapter 142, Acts of the Legislature, 1949, that body did not by direct legislative action create the Tri-State Airport Authority, but it authorized the public bodies therein named, jointly and severally to create the Authority. No matter what position may be taken on the question whether the Authority is a public or private corporation, certainly it was created for a public purpose. In the case of *State ex rel. West Virginia Board of Aeronautics* v. *Edgar B. Sims, Auditor of the State of West Virginia,* 129 W. Va. 694, 41 S. E. 2d 506, it was held in point 1 of the syllabus that: "The advancement of aviation is a public purpose, and the control and regulation thereof, including airports, landing fields and other facilities, are vested in the Legislature, under the police power of the State." The question whether a corporation is a public or private one has been before this Court a number of times. In the case of *Sims* v. *Fisher,* 125 W. Va. 512, 515, 25 S. E. 2d 216, which holds that the public lands corporation is a public corporation and as such a creature and arm of the State, this Court had before it the consideration of a corporation which was created by direct legislative action, which is not the situation in this case. But in the case presented to us on the instant certificate, we have under consideration a corporation created for a public purpose under the holding of this Court in *State ex rel. West Virginia Board of Aeronautics* v. *Sims, supra.* In the very recent case of *Shaffer* v. *Monongalia General Hospital,* 135 W. Va. 163, 62 S. E. 2d 795, it was held that a county hospital established by the State and operated for the benefit of the public by a board of trustees incorporated by statute is a public corporation, notwithstanding it accepted patients for hire, and is engaged in the performance of a

governmental function. In the instant case were it not for the fact that the Huntington Industrial Corporation, as disclosed by the instant pleadings, had contributed sufficient funds to purchase the land upon which the proposed airport is now being constructed, and was given a membership in the Authority, this case would not differ in principle from the case of *Chapman* v. *Huntington Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502, in which it was held that the Huntington Housing Authority, created under an Act of the Legislature which expressly dovetailed into the National Recovery Act, was a public corporation. We, however, are impressed with the fact that the Huntington Industrial Corporation, which is clearly a nonprofit civic corporation, and, as such, a private corporation within the meaning of Section 1 of Article XI of the Constitution, is only one of nine members comprising the Authority, whereas the five public bodies, that is, the City of Huntington, the County Court of Cabell County, the County Court of Wayne County, the City of Kenova, and the Town of Ceredo have the right to appoint and control the appointment of eight of the nine members of the Authority. Having such control and the Authority having been created for what is clearly and evidently a public purpose, we hold, as we did in the *Chapman* case, that the Tri-State Airport Authority "is a public corporation", and being a public corporation under the holding of this Court in *Sims* v. *Fisher, supra,* its creation is not violative of Section 1 of Article XI of the Constitution.

The next question arising on this certificate is whether said Chapter 142 is a special law enacted where a general law is applicable, and thus is violative of Section 39 of Article VI of the Constitution of this State, which reads: "* * *The Legislature shall provide, by general laws, for the foregoing and all other cases for which provision can be so made; and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, nor in any other case in which the courts have jurisdiction, and are competent to give the relief asked for."

The answer to this question lies in the proposition that the grant of Federal funds for airport construction requires a local sponsor authorized to enter into agreements with the Civil Aeronautics Administration, and with the State Board of Aeronautics. The Civil Aeronautics Administration regulations require, as the first prerequisite for consideration of an application for funds, cooperation between the local sponsor and the State Board of Aeronautics and the execution of grant-agreements, wherein the local sponsor agrees to certain things, relating to the future conduct of the sponsor, particularly that it will operate the airport as a public airport without discrimination to any person; will furnish certain space to the Civil Aeronautics Administration for use in regulating aviation; and will abide by the rules and regulations of that Federal regulatory body. The Tri-State Airport Authority has already executed three grant-agreements with the Civil Aeronautics Administration, and has received from it funds, either paid or allocated for the current fiscal year, amounting to four hundred, fifty thousand dollars, and it is now in process of preparing a fourth application for funds for the fiscal year, beginning July 1, 1951, amounting to approximately three hundred thousand dollars.

Taking, as we do, an overall view of this case, as presented by this certificate, we hold that a resort to any general law will not suffice to protect the rights of the parties.

It is contended on the part of the petitioner that said Chapter 142 violates Section 30 of Article VI of the Constitution, in that it purports to authorize the Tri-State Airport Authority to use revenue bonds in the manner provided by the applicable provisions of "article four-a, chapter eight of the code of West Virginia." Our "Official Code" was adopted in 1931. Since then The Michie Company has published Codes in 1932, 1937, 1943, and 1949. Petitioner argues that since Chapter 68, Acts of the Legislature, 1935, as amended, follows the adoption of the "Official Code", reference to the Michie Code is insuf-

ficient. On this basis it is contended that this Court cannot pass on the question whether the Tri-State Airport Authority has the power to issue the revenue bonds. This Court takes notice, as it necessarily must, of all the statutory enactments of the State. Section 30, Article VI of the West Virginia Constitution provides that "no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act." Section 5 (10) of Chapter 142, does not purport to amend or revive an existing law. As Chapter 68, Acts of the Legislature, 1935, as amended, contained in Michie's Code, 1949, as 8-4a, dealing with the original financing of municipal public works, as distinguished from the refinancing under Chapter 120, Acts of the Legislature, 1937, is the only general statute dealing with the original financing of airports by revenue bonds, the reference to 8-4a, Michie's Code, 1949, is not confusing and is not violative of Section 30 of Article VI of the Constitution.

It is further contended that Section 9 of said Chapter 142 is unconstitutional in that it provides that: (1) In the event at the instance of all the public corporations, the Authority shall have the power to make sale of the property and assets, and distribute the proceeds therefrom to the public and supporting bodies in proportion to their respective contributions; and (2) in the event such supporting corporations contributing a majority of the funds to such corporation shall so determine, the Authority may lease all of its property upon such terms and conditions as the Authority may fix. We entertain grave doubt as to the constitutionality of these provisions of said Section 9, but what effect the unconstitutionality of Section 9 will have on the remainder of the Act will be discussed later in this opinion.

Section 8 of said Chapter 142, which provides that the property and instrumentalities of the Authority are to be tax exempt, is questioned as being in violation of Articles V and VI of the West Virginia Constitution. The Authority being, as we have hereinbefore stated, a public

corporation, this case is controlled on the question of tax exemption by the decision in *Chapman* v. *Huntington Housing Authority, supra,* and from the position taken therein this Court does not depart.

It is further contended that the title to Chapter 142, Acts of the Legislature, 1949, is insufficient in view of Section 30, Article VI of the Constitution of West Virginia, which reads: "No act hereafter passed shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof as shall not be so expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act. And no act of the Legislature, except such as may be passed at the first session under the Constitution, shall take effect until the expiration of ninety days after its passage, unless the Legislature shall by a vote of two-thirds of the members elected to each house, taken by yeas and nays, otherwise direct." The title to said Chapter 142 reads: "AN ACT creating the Tri-State Airport Authority, providing for membership therein, for the acquisition by it of real estate and personal property and the construction maintenance and operation of an airport, granting it the power of eminent domain and tax exemption for its property, funds and obligations, and providing for contributions to its funds and the issuance of revenue bonds."

The title of this Act is fully sufficient within the purview of Section 30 of Article VI of the Constitution. It sets out in detail that it is an Act creating the Tri-State Airport Authority; provides in detail for membership therein; for the acquisition of real estate and personal property; for the construction, maintenance and operation of the airport; grants to it the power of eminent domain, tax exemption for its property, funds and obligations; and further provides for the contributions to its funds and the issuance of revenue bonds. In this

regard it does not differ from the title of the Act creating the housing authorities.

It is further asserted by counsel for plaintiff that said Chapter 142 is an unconstitutional delegation of legis-lative authority to the Tri-State Airport Authority. In support of this position we are cited to the case of *Chapman* v. *Huntington Housing Authority, supra,* in which this Court held that the delegation of discretionary power to an administrative body must be accompanied by adequate standards, either prescribed by the statute itself or inherent in the subject matter of the legislation sufficient to guide its exercise. Unlike the Constitution of the United States, the West Virginia Constitution in Article V, Section 1, provides for the division of powers among the legislative, executive and judicial departments "so that neither shall exercise the powers properly belonging to either of the others." We, however, are well aware of the difficulty, if not the impossibility, to set out in a legislative enactment standards for the construction and operation of an airport. Such operation entails the necessity of taking action from time to time as various and unforeseen exigencies may occur. Certainly, the rule as to the necessity of standards to uphold legislative delegation of discretionary power to an administrative body should not be applied so as to render an Act unconstitutional, where, as here, because of the nature of the powers delegated detailed standards cannot be set up. In *West Central Producers' Co-Operative Association* v. *Commissioner of Agriculture, et al.,* 124 W. Va. 81, pt. 3 syl., 20 S. E. 2d 797, this Court held: "The delegation of powers by a legislative body must, generally, be accompanied by a statement of the policy sought to be effected thereby, and reasonable standards set up for its exercise; but this general rule should not be applied, to the extent of holding an act unconstitutional by reason of noncompliance therewith, where important public interests are involved, and on account of the inherent nature of the power delegated, standards applicable generally throughout the State can not be set up."

Moreover, the Tri-State Airport Authority has many of the qualities of a municipal corporation. Such was the holding of the Court in the case of *People of the State of Illinois ex rel. John W. Curren, Jr., State's Attorney v. Harlington Wood, County Judge, et al.*, 391 Ill. 237, 62 N. E. 2d 809, 161 A. L. R. 718, in which the Court specifically held that so far as the public interests and safety are concerned, there is no essential difference between the operation of an airport and the operation of a highway, public park and the like. So we are of opinion that under the holding of this Court in the *West Central Producers' Co-Operative Association* case, the creation of the Tri-State Airport Authority and the delegation to it of the power to acquire property for an airport, and to construct and operate the same, as well as finance the same by the issuance of revenue bonds, as provided by said Chapter 142, is not an unconstitutional delegation of legislative power, as is inhibited by Article V of the Constitution of this State.

Notwithstanding the doubt which exists as to the provisions of Section 9 of said Chapter 142, in so far as that section permits a distribution to contributing members of the Authority, whether they be public bodies or private persons or corporations, in the event of sale or lease of the property, we are of the opinion that if there is any illegality in Section 9 it will not invalidate the remainder of the Act, for the reason that Section 12 of the Act declares that "if any section or provision hereof shall be held unconstitutional, all the remaining sections and provisions of the act shall nevertheless remain valid." This Court has applied such a provision in a number of cases: *Harbert v. The County Court of Harrison County*, 129 W. Va. 54, 69, 70, 39 S. E. 2d 177; *Prichard v. DeVan*, 114 W. Va. 509, 172 S. E. 711; *State v. Sixo*, 77 W. Va. 243, 87 S. E. 267; *State v. King*, 64 W. Va. 546, 63 S. E. 468; *Eckhart v. State*, 5 W. Va. 515. As said by this Court at page 70 of the *Harbert* case: "It will be presumed that the Legislature intended to enact a valid, effective, and permanent statute." We are of the opinion that the overall legis-

lative intent permeating Chapter 142 was to enact a practical way for the creation of an Authority for the acquisition, construction and financing of an airport to serve the cities, towns, and communities lying within the tristate area of Cabell and Wayne Counties. In pt. 5 of the syllabus in the case of Prichard v. DeVan, supra, this Court held: "When a part of an Act is invalid but the remainder reflects the legislative intent and is complete in itself, then the remainder will be upheld." The rule is stated in Cooley, Constitutional Limitations, 8th ed., Volume 1, page 361, in the following language: "Constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. * * * If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed, in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." See also Lewis' Sutherland, Statutory Construction, 2d ed., Section 296.

So applying the severability provisions contained in Section 12, as well as the general rule prevailing in this and other jurisdictions, in the absence of such a clause, we are of opinion that if Section 9 is stricken from the Act as being unconstitutional, the remainder of the Act will remain intact as being a constitutional legislative enactment.

It follows that the ruling of the Circuit Court of Cabell County in sustaining the demurrer to plaintiff's bill of complaint should be affirmed.

We therefore answer in the negative the following questions presented to this Court in the certificate of the circuit court Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, and 11; and hold that question 10 should be answered in the affirmative. So answering, we necessarily uphold the validity of the issuance of the revenue bonds.

*Rulings affirmed.*