STATE *ex rel.* CHARLES E. FARLEY *and* K. W. LEADMAN, COMMISSIONERS, COUNTY COURT OF PUTNAM COUNTY, W. Va.

*v.*

A. M. BROWN, CLERK,
COUNTY COURT OF PUTNAM COUNTY, W. VA.

(No. 12695)

Submitted September 27, 1967. Decided Prepared Order 10/10/67. (Opinion Filed 11/28/67)

*Clarence L. Watt,* for relators. *John A. Amick,* for respondent.

BROWNING, JUDGE:

On September 16, 1967, petitioners, as commissioners of the County Court of Putnam County, adopted a resolution directing the respondent, A. M. Brown, Clerk of the County Court of Putnam County, to provide poll books and other election supplies for use in connection with a special bond election to be held on October 17, 1967. Brown informed petitioners by letter that he would not comply with the resolution because, in his opinion, the bond issue, if approved, would be for an unauthorized purpose contrary to the provisions of Code, 11-8-26, as amended, and assigned several reasons therefor.

Petitioners then instituted this action in mandamus to compel compliance by the respondent alleging in substance that: by Chapter 15, Acts of the Legislature, 1967, "any two or more contiguous counties or municipalities located therein" are authorized to create and establish an authority for the purpose of acquiring and operating a regional airport; on July 11, 1967, the county courts of Putnam, Kanawha and Cabell counties, meeting in a combined session, adopted a resolution creating a regional airport authority; the county courts of Cabell and Putnam, by appropriate resolutions, thereafter ratified and confirmed such action; thereafter the "Southwestern Airport Authority of West Virginia", hereinafter referred to as the Authority, was organized by the representatives of the first board of such authority designated by the county courts of Putnam, Cabell and Kanawha counties and the City of Huntington, West Virginia; the

board also authorized the submission to the Federal Aviation Administration of a proposal for an advance planning grant, which proposal contemplates the construction of a regional airport costing $19,960,000 to be located in Putnam County and to be financed by various federal funds and contributions from Cabell and Kanawha counties of $2,500,000 each and $500,000 from Putnam County; each county must raise its share of the cost by the issuance of general obligation bonds approved by the voters; on September 12, 1967, the voters of Cabell County authorized the issuance of bonds representing its share of the cost and on September 5, 1967, the County Court of Putnam County adopted the resolution in question calling for a special election on the proposition of the issuance by that county of general obligation bonds for the purpose of funding Putnam County's share of the cost; the authority has entered into a written agreement with the County Court of Putnam County wherein the Authority agreed not to utilize the proceeds of any bond issue, if approved by the voters, for operating expenses of the authority and to refrain from selling, mortgaging or otherwise encumbering the airport facilities without first obtaining the consent of the county court; and petitioners have adopted the resolution heretofore mentioned directing the respondent to provide election supplies, which respondent refuses to do.

Attached to the petition as exhibits are: a copy of an order of the County Court of Cabell County entered July 12, 1967, reciting the approval by that court of an informal resolution of cooperation concerning the formation of a Southwestern Airport Authority entered into on July 11, 1967; the informal resolution of cooperation signed the 11th day of July, 1967, by the county courts of Kanawha, Putnam and Cabell, reciting ". . . Be it resolved by the County Courts of Cabell, Kanawha and Putnam Counties and their respective commissioners meeting in combined session that these three counties at this date form a regional

airport authority for the purpose of examining the Midway Airport site and of determining the amount of local financing required for the project''; the advance planning proposal submitted by the Southwestern Airport Authority of West Virginia to the Federal Aviation Authority; the resolution and order submitting the bond issue to the people of Cabell County for their approval; the resolution and order providing for the submission to the voters of Putnam County of the proposed bond issue for that county; the agreement heretofore referred to between the Southwestern Airport Authority of West Virginia and the respective county courts of Cabell and Putnam Counties relating to the use of the proceeds of the bonds when approved and issued; and the resolution of September 16 by the petitioners and the letter of respondent refusing to comply therewith.

On September 20, 1967, this Court issued a rule in mandamus returnable September 26th commanding the respondent to appear and show cause why the writ should not be issued as prayed for pursuant to which the respondent appeared and answered, admitting the allegations of the petition, except the allegation that any regional airport authority was organized in Putnam County on July 11, 1967, and asserting that Chapter 15, Acts of the Legislature, 1967, now designated as Chapter 8, Article 11A of the Code, as amended, is unconstitutional because: the constitution does not permit two or more counties to participate in a business operation or other endeavor to be entirely located within the geographic boundaries of a third county; the contribution to the authority of the proceeds of the bond issues would be an unlawful breach of credit in contravention of Article X, Section 8 of the Constitution of this state; an authority financed by bond proceeds in several counties may not lawfully acquire and hold title to real and personal property solely in its own name and independently of the participating counties; such authority may not lawfully

enter into any agreement with any person, firm, corporation, or the federal government as such is an unconstitutional delegation of legislative power; a county may not acquire and transfer to a third person or authority property of any kind; such authority may not lawfully borrow money and execute evidence of indebtedness, including mortgages and deeds of trust on property derived from the proceeds of bond issues in the various counties; the creditors of such an authority may not lawfully satisfy their claims out of the property acquired and held by the authority through use of public funds; the legislature may not authorize such authority to exercise the right of eminent domain; the legislature may not lawfully absolve a member of such authority from the legal consequences of any irregular, improper or unlawful act prior to the commission or omission thereof; the proposed expenditures are vague and uncertain and therefore the proposed election is illegal; Cabell and Kanawha counties, even when joined by Putnam County, are not contiguous and there is no such legal entity as the "Southwestern Airport Authority of West Virginia". Inasmuch as time was of the essence, this case was decided by order dated the 10th day of October, 1967, awarding the writ as prayed for, and this opinion is being filed for the purpose of stating in more detail the reasons for the Court's decision.

The statute involved in the case was enacted as Chapter 15, Acts of the Legislature, Regular Session, 1967, and made effective from passage. Section 1 thereof provides in part that: "any two or more contiguous counties or municipalities located therein, . . . are hereby authorized to create and establish one or more authorities for the purpose of acquiring . . . and operating a regional airport or airports. . . . " Section 2 provides that such authority shall be a public corporation, may contract and be contracted with and sue and be sued. Section 4 lodges the management and control of each authority in a board whose members

shall be appointed for terms of three years each by the participants contributing to the funds of the authority. Section 8 grants each authority the power to adopt necessary by-laws, rules and regulations; to elect officers and fix compensation for personnel; enter into contracts with any person, governmental department, firm or corporation to achieve its purpose; to delegate any authority given it by law to its officers, agents or members; to borrow money and deliver evidences of indebtedness and give security therefor including mortgages or deeds of trust on its airport facilities and properties; to issue revenue bonds; to prescribe by by-laws the manner of financial participation by members. Section 9 provides that no obligation of the authority shall give any right against any member of the participating governing bodies or any member of the board of such authority and that no indebtedness of the authority shall constitute an indebtedness of any county or municipality participating therein. Section 11 confers upon the authority the right of eminent domain. Section 15 provides that contributions may be made to authorities from time to time "by the counties and municipalities and persons, firms or corporations that shall desire to do so." Section 16 authorizes any of the counties or municipal corporations to transfer and convey to the authority property of any kind theretofore acquired by the counties or municipalities for airport purposes. Section 17 provides that a majority of the counties or municipalities participating may order the authority to sell all of its properties and assets and distribute the proceeds thereof pro rata. In his answer as well as by brief and oral argument the respondent has raised several constitutional questions relating to the statute and, although each constitutional provision that we believe may be pertinent was not specifically referred to by article and section, we have considered all of such provisions.

At the outset it might be well to reiterate what this Court has said on several occasions that: ". . . The

Legislature of this State, unlike the Congress of the United States under the Federal Constitution, does not depend for its authority upon the express grant of legislative power. The Federal Constitution is a grant of power; a State Constitution is a restriction of power. The Constitution of a State is examined to ascertain the restraints, if any, which the people have imposed upon the Legislature, not to determine the powers they have conferred. The Legislature of this State possesses the sole power to make laws and it is necessarily invested with all the sovereign power of the people within its sphere." *Harbert v. County Court of Harrison Co.,* 129 W. Va. 54, 39 S.E. 2d 177. To the same effect are: *Robertson v. Hatcher,* 148 W. Va. 239, 135 S. E. 2d 675; *State ex rel. County Court of Marion County v. Demus,* 148 W. Va. 398, 135 S. E. 2d 352; *Tanner v. Premier Photo Service, Inc.,* 147 W. Va. 37; 125 S.E. 2d 609; *Booten v. Pinson,* 77 W. Va. 412, 89 S.E. 985.

In the determination of whether an act of the legislature is inconsistent with the provisions of the constitution of this state and therefore either valid or invalid, depending upon whether it meets or fails to meet such a test, we are always aware of the provisions of Article V, Section 1 of the constitution of this state which provides that: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature." Although the power to declare an act of Congress or of the legislature void because in conflict with a provision of the constitution of this state or of the United States properly belongs to the judicial branch of the government and is well established, *Marbury v. Madison,* 5 Cranch 49, 2 L. Ed. 60; Article VIII, § 3, Constitution of West Virginia; *Farley v. Graney,* 146 W. Va. 22, 119 S. E. 2d

833, as has often been said, an act of the legislature is not to be declared void unless the violation of the constitution is clear; and the powers of the legislature are "almost plenary", limited only by express, or necessarily implied, restrictions of our constitution. However, we have not hesitated, when we were convinced that the violation was clear, to assert our judicial authority and declare invalid such an act. It is upon these fundamental and basic principles that this Court has carefully and cautiously weighed the issues presented in this case.

The threshold constitutional question presented in the instant case is whether the County Court of Putnam County can be validly empowered by the Legislature to participate with two other counties of this state to finance and establish a regional airport. Article VIII, Section 24 of the constitution relates to powers of county courts and insofar as pertinent reads as follows: ". . . They shall also, under such regulations as may be prescribed by law, have the superintendence and administration of the internal police and fiscal affairs of their counties, including the establishment and regulation of *roads, ways, bridges, public landings, ferries and mills,* with authority to lay and disburse the county levies. . . . *Such courts may exercise such other powers, and perform such other duties, not of a judicial nature, as may be prescribed by law. . . .*" (Italics supplied.) In the case of *In re Boggs' Estate,* 135 W. Va. 288, 63 S. E. 2d 497, this Court held that county courts have unlimited jurisdiction within the scope of the powers delegated to those courts under this section. In *State ex rel. County Court of Cabell v. Battle, Tax Com'r.,* 147 W. Va. 841, 131 S. E. 2d 730, the Court, in interpreting Section 24, said that a county court has authority over the fiscal affairs of its county "under such regulations as may be prescribed by law," indicating that the legislature has retained considerable power over counties in this regard. However, in this case we do not have the

question of whether the County Court of Putnam County has exceeded its power as validly limited by the legislature but on the contrary we have a legislative attempt, at least, to expressly empower the county court of that county to do that which is being questioned by the respondent.

It seems clear from the provisions of Section 24 that the people of this state by its constitution attempted to give the county courts broad powers with regard to transportation. The use of this language in that section, "the establishment and regulation of roads, ways, bridges, public landings, ferries," seems to make that assertion quite clear. Certain it is, however, that neither that section nor any other section of the constitution prohibits the county court from establishing and regulating airports and neither is there any prohibitive language with regard to the legislature having such power. Fortunately we are not confronted in this case with the inhibition contained in Article VI, Section 39 of the constitution of this state to the effect that the legislature shall provide by general laws in all cases in which such a provision can be made and that "in no case shall a special act be passed where a general law would be proper, and can be made applicable to the case, . . ." This act is general in that it provides that "any two or more counties or municipalities" may enter into a compact for the establishment of a regional airport, the only restriction being that these units of government must be geographically contiguous. In *Meisel v. Tri-State Airport Authority,* 135 W. Va. 528, 64 S. E. 2d 32, this Court had before it for determination of its constitutional validity a special act of the legislature creating a Tri-State Airport Authority by the County Court of Cabell County, the City of Huntington, a municipal corporation, the County Court of Wayne County, the City of Kenova, a municipal corporation, the Town of Ceredo, a municipal corporation, and the Huntington Industrial Corporation, "a private civic corporation", and this

Court unanimously upheld the validity of that act. Also, in *Kanawha County Library v. County Court of Kanawha County*, 143 W. Va. 385, 102 S. E. 2d 712, this Court held that a special act of the legislature requiring the County Court of Kanawha County to contribute approximately $83,800.00 annually to the Kanawha County Library was valid. In the opinion in the *Library* case an attempt was made to review many special acts of the legislature, most of which were not attacked in this Court and of those that were practically all were held to be valid. Reference is made to special acts of the legislature by way of analogy to this case where the application is general. Perhaps it should be observed at this point, however, that the means of financing the Tri-State Airport was by revenue bonds whereas the present act authorizes the County Court of Putnam County to issue general obligation bonds, and that matter will be discussed hereinafter. However, the act being general and the authority provided for thereunder being a public corporation, *Meisel v. Tri-State Airport Authority*, 135 W.Va. 528, 64 S. E. 2d 32, the act is not in contravention of the provision of Article XI, Section 1 of the constitution of this state that "no corporation shall be created by special law." Furthermore, the creation of this Authority by virtue of the acts of the county courts of Kanawha, Cabell and Putnam is not an exercise of illegal delegation of legislative power to an administrative body in contravention of the West Virginia Constitution, Articles V and VI. That issue, we believe, has also been determined by the decision in the *Meisel* case and *Chapman v. Huntington Housing Authority*, 121 W. Va. 319, 3 S. E. 2d 502.

Article X, Section 8 of the constitution of this state reads as follows: "No county, city, school district, or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall hereafter be allowed to become indebted, in any manner, or for any purpose to an amount, in-

cluding existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness; nor without, at the same time, providing for the collection of a direct annual tax on all taxable property therein, in the ratio, as between the several classes or types of such taxable property, specified in section one of this article, separate and apart from and in addition to all other taxes for all other purposes, sufficient to pay, annually, the interest on such debt, and the principal thereof, within, and not exceeding thirty-four years. Such tax, in an amount sufficient to pay the interest and principal on bonds issued by any school district not exceeding the aggregate three per centum of such assessed value, may be levied outside the limits fixed by section one of this article: Provided, that no debt shall be contracted under this section, unless all questions connected with the same, shall have been first submitted to a vote of the people, and have received three-fifths of all the votes cast for and against the same.'' The assertion in the resolution, attached as an exhibit to the petition, to the effect that Putnam County is now without bonded indebtedness of any kind is unchallenged by the respondent. True it is that the County Court of Putnam County does not have the power to issue $500,000 in revenue bonds for the establishment of the Authority which will operate the airport and true it is that the legislature of this state does not have the power to authorize the county court of that county to issue such bonds for such purpose unless and until an election is held and three-fifths of all the voters voting in such election approve and authorize the issuance of such bonds which will constitute a debt of the people of that county. It is the holding of such an election that petitioners seek in this proceeding. Therefore, the act is not in contravention of Article X, Section 8 of the constitution of this state.

Code, 11-8-26, as amended, provides in part that, with certain exceptions not here pertinent, ". . . a local fiscal body shall not expend money or incur obligations : . . . (2) For an unauthorized purpose ; . . . ." The respondent, as heretofore noted, referred to this section in his letter of refusal to comply with the resolution of the county court that a bond election be held, contending that the proceeds of such bond issue would be used "for an unauthorized purpose." This Court has on many occasions given its approval to legislative supervision of the fiscal affairs of county governments. See *Meador v. County Court,* 141 W. Va. 96, 87 S. E. 2d 725, and the cases cited therein. But in the instant case there is no constitutional controversy between the legislature and the County Court of Putnam County. The latter is, on the contrary, attempting to do that which the former has authorized by a solemn legislative act. The holding of the election is to determine whether the bonds shall be issued and the proceeds thereof used as Putnam County's financial contribution to the Authority for the construction, etc., of the regional airport. All of this the act authorizes. If Putnam County should thus "incur obligations" of a fiscal nature it will be for an authorized not an unauthorized purpose.

The respondent also contends that, assuming the validity of the act, the authority is illegal inasmuch as the counties of Putnam, Kanawha and Cabell are not "contiguous". Counsel for both the petitioners and the respondent cite cases in their briefs which would appear to support their contentions. An examination of these cases and the cases cited in Vol. 9, Words and Phrases, Contiguous, reveals that the decisions in other jurisdictions with regard to the interpretation of that term are not harmonious and that the meaning to be ascribed to the term depends upon the circumstances and manner in which the phrase was used in an ordinance, statute or constitution. It is the view of this Court that as the term is used in

the act under consideration it was clearly the intention of the legislature to permit two or more counties to join in the formation of a regional airport authority of they were a compact territorial unit wherein at least one territorially bounded one other such county, but that it was not necessary that each of such counties border upon or touch all of the other counties which might enter into an agreement for such purpose. Article VI, Section 4 of the Constitution of West Virginia, relating to the division of the state into senatorial districts, insofar as pertinent, reads as follows: "The districts shall be compact, formed of *contiguous territory,* bounded by county lines. . . ."(Italics supplied.) We take judicial notice of the fact that for more than one hundred and four years the legislature of this state has interpreted the phrase "contiguous territory" as contained therein to mean that compliance therewith is achieved when a county of a senatorial district adjoins or territorially touches another county of the district and that it is not necessary that each should territorially join all of the other counties of the district. See also, *Robertson v. Hatcher,* 148 W.Va. 239, 135 S.E. 2d 675. We hold that the three counties which comprise the Authority are contiguous. Without specifically referring to every constitutional objection which has been raised by the respondent we believe that the answer is to be found in the provisions of the constitution of this state which have been cited and that the act is not invalid for any of the other reasons stated in the answer of the respondent and heretofore set out in some detail in this opinion.

For the reasons stated herein the writ of mandamus was awarded on the 10th day of October, 1967, commanding the respondent to do that which he was required by law to do to enable the voters of Putnam County to vote upon the question of whether they would approve the issuance of $500,000 of general obligation bonds.

*Writ Awarded.*