KANAWHA COUNTY PUBLIC LIBRARY

*v.*

THE COUNTY COURT OF KANAWHA COUNTY

(No. 10941)

Submitted January 8, 1958. Decided March 25, 1958.

*Donald O. Blagg, A. G. Stone,* for relator.

*D. Boone Dawson,* for respondent.

BROWNING, JUDGE:

Petitioner, Kanawha County Public Library, a corporation, seeks a writ of mandamus requiring respondent, the County Court of Kanawha County, to appropriate and pay over to the Board of Education of the County of Kanawha, for the support and use of petitioner, the sum of $83,800.00 as and when such amount shall be collected, and to lay a levy and make appropriation and payment for the same purpose in each succeeding fiscal year at the rates from time to time requested by petitioner.

Petitioner alleges its creation by Chapter 178, Acts of the Legislature, Regular Session, 1957, which provides:

Section 1: "There is hereby created a public library, which shall be known as the 'Kanawha County Public Library', which shall be supported by the board of education of the county of Kanawha the county court of Kanawha County and the city of Charleston, as a joint endeavor of the three governing authorities in the manner hereafter prescribed."

Section 2: "There shall be a board of eighteen directors * * * [All appointed by Board of Education and removable by it.] * * *. The board of directors shall have all the powers necessary,

convenient and advisable for the proper operation, equipment and management of the said library; * * *."

Section 3: (Library Board to be a Corporation.)

Section 4: (Title to property now devoted to library purposes vested in Kanawha County Public Library.)

Section 5: "In order to provide for the support, maintenance and operation of the public library hereby created, and any and all branches thereof, the supporting governing authorities shall, upon written request by its board of directors, levy annually as follows within the respective taxing districts of the governing authorities * * * amounts not exceeding * * *. Each year the board of directors shall request each of the three governing authorities to levy the same amount. * * *"

Section 6: "All money collected or appropriated by the three governing authorities for library purposes shall be deposited in a special account of the board of education of the county of Kanawha, and shall be disbursed by it, as directed by the board of directors * * *."

Section 7: (All employees of the public library deemed employees of board of education for certain purposes.)

Section 8: (Effect of future amendment of general laws.)

Section 9: (Severability provision.)

Petitioner then alleges that: Pursuant to the provisions of the above statute, it requested respondent, as well as the Board of Education of the County of Kanawha and the City of Charleston, to lay a levy for the current fiscal year within the maximum permitted; respondent included such item in its estimate, conditioned upon the above statute being held constitutional, otherwise the amount to be appropriated for other purposes, and duly and legally laid its levies, which the Sheriff of Kanawha County is now engaged in collecting.

Petitioner then avers that respondent has heretofore refused and still refuses to appropriate any part of the

funds arising from the levy, or to pay the same to the Board of Education of the County of Kanawha for the use and benefit of petitioner as required by the statute and will continue to do so unless required by mandate of this Court, and prays for a writ of mandamus as hereinabove stated.

Pursuant to a rule to show cause why the writ of mandamus as prayed for should not be awarded against it, respondent appeared and demurred on the grounds that: (1) Chapter 178 is unconstitutional because in conflict with the provisions of Article VI, Section 39 of the West Virginia Constitution; (2) Chapter 178 is void because in conflict with Article VIII, Section 24, of the West Virginia Constitution; (3) Because it requires the county court to lay a levy, collect taxes and turn the same over to a library board created by the board of education, and completely under its supervision and control; (4) Because it takes from the county court funds allocated to it for its mandatory purposes and delegates them to an agency of the school board for expenditures for purposes for which the county court is not required to provide by law; and (5) Because it takes money provided for local government services and uses it for non-government service, to wit: a public library.

The respondent also answered, admitting the truth of the allegations of the petition of which it had knowledge, but further charging that the Board of Education of the County of Kanawha is the real plaintiff in this action, and that the sole purpose for which the act was passed was to compel respondent and the City of Charleston to pay out of their own funds to support an institution controlled, managed and operated by the board of education.

The constitutional provisions with which the act is alleged to conflict are as follows:

Article VI, Section 39: "The Legislature shall not pass local or special laws in any of the following enumerated cases; that is to say, for

"Granting divorces;

"Laying out, opening, altering and working roads or highways;

"Vacating roads, town plats, streets, alleys and public grounds;

"Locating, or changing county seats;

"Regulating or changing county or district affairs;

"Providing for the sale of church property, or property held for charitable uses;

"Regulating the practice in courts of justice;

"Incorporating cities, towns or villages, or amending the charter of any city, town or village, containing a population of less than two thousand;

"Summoning or impaneling grand or petit juries;

"The opening or conducting of any election, or designating the place of voting;

"The sale and mortgage of real estate belonging to minors, or others under disability;

"Chartering, licensing, or establishing ferries or toll bridges;

"Remitting fines, penalties or forfeitures;

"Changing the law of descent;

"Regulating the rate of interest;

"Authorizing deeds to be made for and sold for taxes;

"Releasing taxes;

"Releasing title to forfeited lands."

"The Legislature shall provide, by general laws for the foregoing and all other cases for which provision can be so made; and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, nor in any other case in which the courts have jurisdiction, and are competent to give the relief asked for."

Article VIII, Section 24: "The county courts, through their clerks, shall have the custody of all deeds and other papers presented for record in their counties, and the same shall be preserved therein, or otherwise disposed of, as

now is, or may be prescribed by law. They shall have jurisdiction in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators, and the settlement of their accounts, and in all matters relating to apprentices. They shall also, under such regulations as may be prescribed by law, have the superintendence and administration of the internal police and fiscal affairs of their counties, including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, with authority to lay and disburse the county levies. * * *. They shall, in all cases of contest, judge of the election, qualification and returns of their own members, and of all county and district officers, subject to such regulations, by appeal or otherwise, as may be prescribed by law. *Such courts may exercise such other powers, and perform such other duties, not of a judicial nature, as may be prescribed by law.* * * *." (Italics supplied.)

That this legislation is local in its nature cannot be challenged. Its provisions are applicable to one institution, a public library located in the City of Charleston, Kanawha County. That alone is not sufficient to make it invalid. This Court cannot concern itself with the wisdom of this legislation, but only with the question of whether the Legislature had the authority under the Constitution of this State to pass such an act. Section 2 of Article III of the Constitution of this State provides that: "All power is vested in, and consequently derived from, the people. Magistrates are their trustees and servants, and at all times amenable to them." Since *Ex Parte Stratton,* 1 W. Va. 304, the position that this section vests in the Legislature of this State almost plenary powers on every subject, not foreclosed by some other provision of the Constitution, has not been questioned. The powers of the Legislature of this State are not to be confused with those of the Congress of the United States. The Federal Constitution is a grant of power, while the Constitution of this State is a restriction of power. While we look to the Federal Constitution to see what Congress may do, we look

to our Constitution to see what the Legislature may not do. In 1 Cooley's Constitutional Limitations, 8th Edition, Page 346, is this statement: "* * * The judiciary can only arrest the execution of a statute when it conflicts with the Constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power; * * *." Although no such power is expressly granted by either the Federal or the West Virginia Constitution, the principle was long ago established that the determination of whether a legislative act was in conflict with a constitutional provision was a question to be determined by the judicial branch of the government. *Marbury* v. *Madison*, 5 Cranch 49, 2 L. Ed. 60. But it has often been said that an Act of the Legislature is not to be declared void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt. It is upon these fundamental and basic principles that this Court has carefully and cautiously weighed the issues presented in this proceeding.

Although the Legislature of this State has enacted into law hundreds of local and special acts, comparatively few of either type have been tested in this Court as to their constitutionality. Section 39 of Article VI of the Constitution of this State does not close the door on such acts, but merely provides that in eighteen designated areas no "local or special laws" shall be passed, and then provides that in no other case "shall a special act be passed, where a general law would be proper, and can be made applicable to the case, * * *." Certainly it could not be seriously contended that a general law would be proper to attain the results sought by the Legislature in requiring the respondent, the Board of Education and the City of Charleston to make certain contributions for the support of a public library which has been in existence for more than fifty years. In many of the counties, there is no public library.

Article 1 of Chapter 10 of the Code, several sections of which have been amended since 1931, provides for

the establishment and maintenance of public libraries, including a provision for the establishment of a State Library Commission consisting of five members to be appointed by the Governor to assist in the organization and maintenance of such libraries. A public library is therein defined as a "* * * library maintained wholly or in part by any governing authority from funds derived by taxation and the services of which are free to the public.* * *" This further definition appears in Section 1: "* * * The term 'governing authority' shall be construed to mean county court, county board of education or the governing body of any municipality." While this article authorizes county courts, boards of education and municipalities "to establish, equip and maintain a public library, or to take over, maintain or support any public library already established", such authority therein is permissive only. However, it is interesting to observe that two local acts have been passed by the Legislature *requiring* an annual levy for the support of a public library. Chapter 118, Acts of the Legislature, 1st Extraordinary Session, 1933, required the Board of Education of Ohio County to lay an annual levy for the Wheeling Public Library. Likewise, Chapter 200, Acts of the Legislature, Regular Session, 1953, required the Board of Education of Tyler County to pay into the library fund for the support of the public library of Tyler County certain amounts and "not less than $1,800.00 per annum." Neither of these acts was tested in this Court concerning its constitutionality.

The validity of an Act of the Legislature of 1895, relating to the relocation of the seat of government of the County of Grant was passed upon by this Court in *Groves, et al.* v. *County Court of Grant County,* 42 W. Va. 587, 26 S. E. 460. That act provided that a majority of the votes cast should be sufficient to relocate the county seat in all counties "where the county seat of any county has been relocated, etc., since the first day of January, 1872." Only the county seat of Grant County had been relocated between 1872 and 1895. In holding that this was a "special" rather than a general act, this Court said: "* * * so that

in meaning, purpose, and effect it is a law not in the slightest degree more general, or in a less degree peculiarly and distinctively descriptive of Grant County, than if it had spoken directly out and said: 'But in the case of Grant county a majority of the votes cast shall be sufficient to relocate the county seat.' This is classification run mad. Why not say all counties of the state named 'Grant'? * * *." This act was a clear violation of the express provision prohibiting a special act "locating, or changing county seats".

The controlling issue in this proceeding is whether the act under consideration regulates or changes the affairs of Kanawha County. The other two units of local government affected by the act are not parties to this litigation.

By an act of the Legislature, Chapter 26, Acts of 1911, a county high school was created in Nicholas County to be located in or near the Town of Summersville, and the cost of the erection and maintenance of the school was to be provided for by taxes to be levied by "the board of directors of said school" upon all the taxable property in that county. The act was attacked by forty taxpayers of Nicholas County in *Herold, et al.* v. *McQueen, Sheriff, et al.*, 71 W. Va. 43, 75 S. E. 313, and this Court held the act valid and not violative of Section 39 of Article VI of the Constitution, and in particular that provision thereof as to "regulating or changing county or district affairs." In the opinion, the Court said: "The act does not attempt to regulate or change the county and district affairs of Nicholas County. Such county and district affairs as the legislature is inhibited from regulating or changing by a local or special act, are still carried on in that county under the general laws applicable alike to all counties and districts of the state. The act only creates a county high school, and provides for its support by a tax to be levied on the tax payers of the whole county; it does not work a change in, or operate as a regulation of, the general county and district affairs which already existed, but it is a creation of something in addition thereto. * * *",

thus summarily dismissing the contention that the act violated any of the specific inhibitions of Article VI, Section 39 of the State Constitution. The Court proceeded to discuss the question of whether the act was invalid, under the general prohibition that no special act should be passed where a general law would be proper and could be made applicable to the case, and stated: "* * * But must not the legislature determine for itself, before passing the law, whether or not a general law can be made applicable to the case? We think clearly that the question is chiefly one of expediency, a matter for the legislative, and not judicial, judgment. * * *. The determination of such preliminary matters by the legislature is not reviewable by the courts; they are not judicial questions. * * *"

This Court also upheld as valid an Act of the Legislature of 1923, providing for the establishment of a county high school in the County of Upshur, and providing for "a special levy and board of trustees for the same" in *Casto et al.* v. *Upshur County High School Board*, 94 W. Va. 513, 119 S. E. 470. The pertinent holding in *Herold* v. *McQueen, supra,* was approved in this language: "* * * This question was raised and discussed in *Herold* v. *McQueen, supra,* and it was there held that the act was not violative of sec. 5, Art. 12, [nor Section 39, Article VI] because it was special. Moreover, it will be observed that, while that act creating the Nicholas county high school was not to become effective until it had been adopted by a vote of the people, Judge Williams said in the opinion: 'The legislature could have established the high school without submitting the question to a vote of the people at all, and may have submitted it to a vote only for the reason that it thought it unwise to establish the school unless a majority of the voters of the whole county were in favor of it.'"

In the same year that the *Herold* case was decided, this Court upheld in *Woodall* v. *Darst, Auditor*, 71 W. Va. 350, 80 S. E. 367, the validity of an Act of the Legislature appropriating money for compensation to an injured mem-

ber of the national guard while on duty in that capacity. The 6th and 7th Syllabus points read respectively as follows: "Whether an appropriation is for a public, or a private, purpose is a judicial question; but if it does not clearly appear from the act of appropriation that it is for a purely private purpose, the court can not so decide. If any doubt exists as to whether it is for a public or private purpose, the court must uphold the legislative act." "A fact once determined by the Legislature, and made the basis of an act, is not thereafter open to judicial investigation." In the opinion, the Court said: "The right of the courts to inquire into an appropriation of the public funds, to determine whether it is for a public or a private purpose, is recognized. Such a question presents a fact to be determined, and is, therefore, a matter proper for judicial ascertainment. But judicial inquiry can extend no further than is necessary to determine the fact. * * *"

Then in *Brozka et al.* v. *County Court of Brooke County*, 111 W. Va. 191, 160 S. E. 914, without reference to the doctrine laid down in the *Herold* and *Casto* cases, and quoting from the opinion in the *Woodall* case, the Court struck down as unconstitutional an Act of the Legislature purporting to relieve the taxpayers of the City of Wellsburg from the payment of county road taxes on all taxable property within the municipality.

In *Truax-Traer Coal Company* v. *Compensation Commissioner, et al.*, 123 W. Va. 621, 17 S. E. 2d. 330, it was held that six of the Acts of the Legislature of 1941, directing the State Compensation Commissioner to reopen and rehear the complaints of six persons whose claims had been barred from further consideration by the general statute of limitations were invalid as being in contravention of Section 39 of Article VI of the Constitution of this State. In the opinion, the Court said: "Section 39 of Article VI of the Constitution of West Virginia provides that '* * * in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, * * *.' A provision substantially

equivalent to this section is found in the constitution of a number of other states, and has by the weight of authority been held to make the judgment of the legislature on the propriety and applicability of a general law conclusive and not subject to judicial review. * * * [citing authority including *Woodall* v. *Darst, supra.*] The constitutional provision under these holdings became merely monitory and of no practical effect. From this helpless position, the courts soon began to recede, many holding that the question is for the legislature, unless its disregard of the constitutional provision is clear and palpable. * * * [citing authority] This Court in the case of *Brozka* v. *County Court,* 111 W. Va. 191, 160 S. E. 914, by amplifying and distinguishing *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N.S.) 83, Ann. Cas. 1914B, 1278, definitely brings this jurisdiction within the latter group of cases. * * *" Neither the *Herold* nor *Casto* case is mentioned in the opinion, nor was any reference made to these cases in *Brozka* v. *County Court, supra.* It is also to be noted that in both *Brozka* v. *County Court, supra,* and *Truax-Traer Coal Company* v. *Compensation Commissioner, et al., supra,* the legislative acts were held invalid, not because a general law would have been proper, but because there was, in fact, such general laws in effect prior to the passage of the special acts.

In *Staley* v. *Wayne County Court, et al.,* 109 W. Va. 251, 153 S. E. 587, this Court held invalid an Act of the Legislature of 1929 providing for the financing by a bond issue and building of a road in Wayne County in so far as the act directed with "great particularity" the location of the road. The act provided that the road should be on the west side of Whites Creek between two designated points, whereas the county court prepared plans and specifications by which the road was to be on the east side of Whites Creek in that vicinity. The Court held that the act was in clear violation of that part of Section 39, Article VI, of the Constitution which provides that: "The Legislature shall not pass local or special laws in any of the following enumerated

cases; that is to say, for * * * Laying out, opening, altering and working roads or highways; * * *." The Court also found that portion of the act to be in conflict with Article VIII, Section 24, of the Constitution providing that county courts shall have, under such regulations as may be prescribed by law, "the superintendence and administration of the internal police and fiscal affairs of their counties, including the establishment and regulation of roads, * * *."

Amos Green, an employee of the Board of Education of Braxton County, received a severe injury by falling from a bridge to the bed of a river in performing duties for his employer while the latter was engaged in a governmental function in maintaining and repairing the bridge. By an Act of the Legislature, Chapter 138, Acts of 1949, the board was directed to pay to Green the sum of $2,029.00 upon the finding that a "moral obligation" existed, and that the board should reimburse him to that extent for the injuries he had suffered and the expenses he had incurred. The board by formal order unanimously refused to pay such sum and Green sought mandamus in this Court to direct the members of the board to comply with the Act of the Legislature. This Court found that a moral obligation existed, but held that this act was in violation of Section 39, Article VI of the Constitution which provides: "The Legislature shall not pass local or special laws * * * Regulating or changing county or district affairs; * * *.", in so far as it directed the board to make such payment, but that the act was constitutional in authorizing the board in its discretion to do so. *State ex rel. Amos B. Green* v. *Board of Education of Braxton County,* 133 W. Va. 750, 58 S. E. 2d. 279. None of the cases to which reference has been made in this opinion, with the exception of *Woodall* v. *Darst, supra,* as to the question of the existence of a moral obligation, was cited in the majority opinion in that case. Since the board was immune from an action at law, the Court held that the act was invalid to the extent that it directed the board to pay the petitioner the

sum of money provided in the act since in so doing the Legislature was "regulating the fiscal affairs of the board."

While this Court said in the opinion in *Truax-Traer Coal Company* v. *Compensation Commissioner, supra,* that it had in *Brozka* v. *County Court, supra,* "by amplifying and distinguishing" *Woodall* v. *Darst, supra,* changed the rule of the earlier cases making the judgment of the Legislature on the propriety and applicability of a general law conclusive and not subject to judicial review, upon no other point has *Herold et al.* v. *McQueen, Sheriff, et al, supra,* and *Casto et al.* v. *Upshur County High School Board, supra,* been overruled or disapproved. The Court in the *Herold* case, to repeat, said: "The act does not attempt to regulate or change the county and district affairs of Nicholas County. Such county and district affairs as the legislature is inhibited from regulating or changing by a local or special act, are still carried on in that county under the general laws applicable alike to all counties and districts of the state. The act only creates a county high school, and provides for its support by a tax to be levied on the tax payers of the whole county; it does not work a change in, or operate as a regulation of, the general county and district affairs which already existed, * * *."

It will be noted in reading the inhibitory provisions of Article VI, Section 39, that all except one are specific. The definitions of the words "regulate", "change" and "affairs" in Black's Law Dictionary, 3rd Edition, and Websters New International Dictionary, 2nd Edition, indicate the vagueness and generality of this part of Section 39. However, the language is specific enough to prohibit the Legislature from passing a local or special law which deprives a county or district of the funds necessary to the functioning of required activities of government. To quote from the opinion of Judge Fox in *Kenny, etc.* v. *County Court of Webster County et al.,* 124 W. Va. 519, 21 S. E. 2d. 385: "* * * We cannot have constitutional government in the counties without courts for the control of their fiscal affairs; taxes must be col-

lected, and therefore, we must have assessors and sheriffs; law and order must be preserved, and crime suppressed, therefore, we must have courts, not only to try persons accused of crime, but settle disputes of a civil nature which arise between citizens, and such courts must have clerical assistance; juries must be summoned and paid; we must have officers to apprehend and prosecute alleged criminals; jails must be built and maintained, and prisoners fed; and elections must be held for the selection of officials, county, state and national. All these, and many others which might be mentioned, are the mandatory expenses necessary to the functioning of constitutionally required activities of county government, * * *."

It is clear from the record in this case that the act in question does not deprive the County of Kanawha of funds necessary to meet the expenses of these mandatory functions of government. The respondent expresses apprehension of what the Legislature may do in the future to affect its affairs, even though this act may not do so. "* * * a court will not anticipate prospective conditions which may never arise, in order to declare a law unconstitutional; and a statute is not to be upset on hypothetical and unreal possibilities if it is valid according to the facts as they exist." 12 C. J., Constitutional Law, §219. The following quotation is from the opinion of Judge Hatcher in *Road Commission* v. *County Court of Kanawha County, etc.,* 112 W. Va. 98, 163 S. E. 815: "* * * The relation which counties bear to the state must not be overlooked. The state is the sovereign, and counties are mere territorial subdivisions for purposes of convenience. Whatever of power is had by county courts was delegated by the state. It is familiar law that this power may be supervised by the legislature in the interest of public exigencies. * * *"

In seeking enlightenment and guidance in determining the primary issue presented in this proceeding, an examination has been made of the Constitution of 1863, the Constitution of 1872, the Debates and Proceedings

of the First Constitutional Convention of West Virginia, Volume III, and more than a cursory study of the "special acts" of the Legislature from its first meeting, as found in the "Index of the Special Acts and Resolutions of the West Virginia Legislature (1949)", in so far as such acts appeared applicable. Before the adoption of the Constitution of 1863, there was directed to the citizenry of this State by the delegates an address which is found in the Debates and Proceedings, Volume III, and signed by A. D. Soper, President, and Ellery R. Hall, Secretary. These quotations are from that address, separated by omission marks: "By the Constitution now presented, the legislative power of the State is vested in a senate and house of delegates. This power would be supreme in all cases were it not limited by the state and National constitutions. The restrictions inserted in the constitution now proposed, to prevent the abuse and the unnecessary use of this power, cannot be enumerated in this address. Your attention, however, is called to the fact, that in all *practicable* cases, the legislature is required to act by general laws. This obviates, to *a great extent, the necessity* for *special* legislation, and discourages that private solicitation of the members, the tendency of which is to introduce corruption and bribery as elements of legislation. * * *" (Italics Supplied.) "* * *." "* * * The confinement of the action of the legislature to general laws in reference to those *practical matters which concern every citizen in every section of the State*, gives assurance that, if not at first, yet speedily, those laws will receive that form which is most in accordance with the united wisdom and experience of the whole population. This illustrates the true theory and object of representative government." (Italics supplied.) Although the Constitution of 1863 did not contain the eighteen specific inhibitory provisions, they were added by the Constitution of 1872. The evidence is overwhelming, from an examination of the Special Acts of the Legislature, under the Constitutions of both 1863 and 1872, that the Legislature found it necessary, in its wisdom to enact special legislation, inasmuch as it was

not "practicable" in many instances to act by general laws. It is true, of course, that, where the unconsitutionality of an act is clear, no amount of legislative interpretation of a constitutional provision is to be considered by a court in ascertaining its meaning. However, where, as here, there is a provision containing words that may have different meanings to different persons, and which are subject to different interpretations by different tribunals, we are bound by the decisions of this Court to give careful consideration to the legislative interpretation of this constitutional provision over a period of almost a hundred years. The construction given it by previous decisions of this Court cannot be disregarded unless such decisions are overruled. These examples are illustrative of many local or special Acts of the Legislature: Chapter 17, Acts of 1872, requiring the German language to be taught in the free school of Charleston by a male teacher; Chapter 151, Acts of 1927, requiring the County Court of Hancock County to mark graves of early settlers, pioneers and soldiers; Chapter 83, Acts of 1875, authorizing Grant and Mineral Counties to erect and maintain toll gates on the county roads, and collect tolls; Chapter 12, Acts of 1864, credit of $200.00 allowed William Turner, collector for Wayne County for funds taken from William Nixon, collector, "by rebels"; Chapter 12, Acts of 1864, credit of $645.00 for funds taken from William Nixon himself "by rebels"; Chapter 85, Acts of 1881, judgment against Andrew J. Cole in the Circuit Court of Mercer County, by East River District, released and extinguished; Chapter 114, Acts of 1870, marriage between two named persons legalized; Chapter 158, Acts of 1872-73, unlawful to dig ginseng on lands of another without consent in counties of Pocahontas, Greenbrier and Webster; Chapter 111, Acts of 1925, high school at Sharples in Logan County validated; Chapter 104, Acts of 1929, validating high school at Brush Fork in Mercer County; Chapter 124, Acts of 1915, establishing a county high school in Putnam County, Chapter 101, Acts of 1915, Chapter 102, Acts of 1915, Chapter 87, Acts of 1923, Chapter 31, Acts of

1905, and many others establishing county high schools, all prior to the enactment of Chapter 8, Acts of the Legislature, 1st Extraordinary Session, 1933.

Article IX, Section 6, of the Constitution empowers the Legislature, in regard to county officers, to "provide for the compensation, the duties and responsibilities of such officers, and may provide for the appointment of their deputies and assistants by general laws."

Article IV, Section 8, provides that: "The Legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed." Notwithstanding such provisions, Code, 7-7-1, as amended, relating to the salary of sheriffs has 55 subsections fixing the annual compensation of the sheriff of each county. Similarly, 7-7-2, as amended, relating to the salaries of county clerks; 7-7-3, as amended, relating to the salaries of circuit clerks; 7-7-5, as amended, relating to the salaries of prosecuting attorneys; and 7-1-5, as amended, relating to the salaries of county commissioners, fix the salaries of each of these officials in each county by special not general acts. A comparison of the salaries paid to both the constitutional and statutory officials of the different counties indicates that there is not necessarily a direct relationship between the salaries fixed for such officials, and the geographical size of the county, or its population. "The united wisdom and experience of the whole population", to quote from the address of the delegates of the Convention of 1863, addressed to their constituents, show that there have been many "practicable cases" in which the desired result could be obtained only by special laws. The following examples show the impracticability of fixing the salaries of the officials of all of the counties in the State by general law. In 1950, Kanawha County had a population of 239,629, while Wirt County had a population of 5,119. The area of Kanawha County is 913 square miles, and the area of Wirt County is 234 square miles. The

assessed valuation of all property in Kanawha County in 1956 was $449,696,125.00, and in Wirt County $6,641,535.00. Randolph, the largest county in the State, with an area of 1,046 square miles, had a population of 30,558 in 1950, and property of an assessed valuation in 1956 of $37,684,-140.00, while Ohio County, one of the smaller counties in area with 109 square miles, had a population in 1950 of 71,672, and an assessed property valuation in 1956 of $220,598,000.00. The infeasibility in many instances of drafting a general law adaptable to the needs and desires of the citizens of all counties, and their peculiar circumstances is obvious. The yearly salaries of the sheriffs of the four mentioned counties are respectively, $9,000.00, $2,500.00, $5,000.00 and $5,000.00. Thus, it may be assumed that those who represent these counties in the Legislature have been instrumental in having adopted such special acts with regard to salaries paid out of the county treasury to public officials as represent "the united wisdom" of the citizens of the counties which they represent. Such special acts are sometimes necessary, when not forbidden by the Constitution, to effectuate rather than to destroy local self-government.

With due regard to the fundamental principles of government, enunciated herein, and the decisions of this Court cited in this opinion, we are constrained to hold that this act does not violate the provisions of Article VI, Section 39 of the Constitution of this State. "Courts will not hold an act of the legislature to be contrary to the Constitution without great caution and unless it be manifestly and beyond doubt unconstitutional." Pt. 3, Syllabus, *South Morgantown* v. *Morgantown*, 49 W. Va. 729, 40 S. E. 15.

The contention that the act is in violation of Section 24, Article VIII of the Constitution, gives this Court no concern. In *Kenny, etc.* v. *County Court of Webster County, et al., supra,* in discussing this section, it was said in the opinion: "* * * Again, attention is called to the fact that this power is to be exercised 'under such regulations as may be prescribed by law.' The enact-

ment of law is a legislative prerogative, so that the clear meaning of the constitution is that under such regulations as may be prescribed by the Legislature, through its enactment of laws, county courts shall have such superintendence. * * *" See also 15 C. J., Counties, §53; 14 Am. Jur., Counties, §30; 1 Cooley on Taxation, 907. It is true as stated by the respondent that this act requires the County Court of Kanawha County and the City of Charleston to provide funds for the maintenance of an institution whose board of directors are selected by the Board of Education. However, no authority is cited in support of the contention that such provision renders the act invalid. To the contrary are *Kenny, etc.* v. *County Court of Webster County, et al., supra,* and *Meisel* v. *Tri-State Airport Authority, etc.,* 135 W. Va. 528, 64 S. E. 2d. 32. Perhaps it would have been wise for the act to have provided that all who contributed should have a voice in the management of the library. Again, we can only say that this is a Court and not a legislative body.

Finally, we are asked to hold that a public library is not a function of government, and, therefore, the Legislature has no authority to require local units of government to expend funds for its maintenance. The quotations herein from Article 1 of Chapter 10 of the Code indicate that public libraries are a matter of concern to the people of this State, and that it is a matter of public policy that their creation and maintenance be encouraged. 51 Am. Jur., Taxation, §356.

In *Glover* v. *Sims, etc.,* 121 W. Va. 407, 3 S. E. 2d. 612, this Court held that an Act of the Legislature was not in conflict with the Constitution of this State which provided for the payment out of the State Treasury of the sum of $130,000.00 for indebtedness of the athletic department of West Virginia University, which indebtedness resulted because the income of that department had been used to pay interest and principal on outstanding bonds of the West Virginia University Stadium Corporation, a private corporation. In the opinion by Judge

Maxwell is this statement: "* * * No one can successfully assert that a proper athletic program is not appropriate to a great educational institution. The physical welfare of young men and women cannot with propriety be ignored. Education is a proper function of state government and includes appropriate physical development as well as mental and moral. * * *" That huge sums of money have been expended in this State pursuant to statutes, city ordinances, or orders of county courts for the physical development or pleasure of its citizens is common knowledge. Football stadiums, baseball parks, "field houses", recreation centers, golf courses, swimming pools, public parks and other public recreational and entertainment areas exist in all sections of the State. Public libraries are scarce. However, we find that they are as much a public function as are the other enterprises heretofore mentioned. Particularly is this true of a public library containing 166,000 volumes, with a circulation of approximately 750,000 annually, which acts also in the capacity of furnishing to each of the more than 500 classrooms of Kanawha County several hundred volumes each year. The importance of physical development cannot be minimized, and the importance of mental development must not be minimized. It is not likely that any future Wellington, returning from a victorious war, will accredit his victory to "the playing fields of Eton." The use of approximately 750,000 books annually by the citizens of Kanawha County indicates that there are many who agree with Milton that: "A good book is the precious life blood of a master spirit, embalmed and treasured up on purpose to a life beyond life."

The writ as prayed for will be awarded.

*Writ awarded.*