# WHEELING

HEROLD et al. v. McQUEEN, *Sheriff, et al.*

Submitted April 23, 1912.   Decided April 25, 1912.   (Opinion filed June 15, 1912).

1. STATUTES—*Schools and School Districts—General or Local and Special Laws—Establishment of County High School.*

   Chapter 26, Acts 1911, creating the Nicholas county high school in or near to the town of Summersville, and providing for the purchase of the ground, the erection of a building and the maintenance of the school, by a tax to be levied by the board of directors of said school upon all the taxable property in the county; and constituting the county superintendent of free schools and the members of the county court, *ex officio*, as four members of the board of directors, and providing for the election of a fifth member at the next succeeding general election; and providing for the submission of the act to a vote of the people of the whole county, and not by districts, for their

ratification or rejection, at a special election to be ordered by the county court; and providing that the act shall not become effective unless ratified by a majority of the votes taken at said special election, held to be a valid act, and not in contravention of any of the following sections of the Constitution, viz.: Sec. 39, Art. VI; Secs. 1, 5, 6, 10 and 12, Art. XII; Sec. 24, Art. VIII; and Sec. 8, Art. VII.

Appeal from Circuit Court, Nicholas County.

Bill in equity by H. W. Herold and others against David McQueen, Sheriff, and others. From a decree for defendants, plaintiffs appeal.

*Affirmed.*

*Geo. E. Price,* and *Squire Halstead,* for appellants.

*Brown, Jackson & Knight, A. B. Koontz, A. L. Craig, S. R. King, Brown & Eddy,* and *Alderson & Breckinridge,* for appellees.

WILLIAMS, JUDGE:

H. W. Herold and thirty-nine other tax payers of Nicholas county, suing on behalf of themselves and all other tax payers of said county, filed a bill against the sheriff, the board of directors of the Nicholas County High School, and the county court of said county, to enjoin the collection of a certain tax which had been levied for the purpose of raising funds with which to purchase ground in the town of Summersville, or near thereto, for the erection of a county high school building thereon, pursuant to a special act of the legislature, passed at the regular session of 1911. A temporary injunction was awarded, but was later dissolved on motion of defendants, after due notice. From that order of dissolution, made on the 27th of November, 1911, plaintiffs have appealed.

In view of the nature of the case, it being one affecting the interest of all the citizens of a county, we thought we ought to determine it as soon as possible; and, therefore, we have taken it up for decision out of its regular order on the calendar of submitted cases.

The bill assails the act creating the Nicholas County High School on the alleged ground that it contravenes certain provisions in the Constitution; and counsel for appellants, in their

brief, assign a number of reasons why they think the act should be held to be unconstitutional.

For a few years after the adoption of the United States Constitution it was a much mooted question, whether or not the court had the power and the right to declare an act of Congress to be void on the ground that it contravened some provision of the Constitution. Many able lawyers thought it was not in the power of the court to do so. Among those who held to that view was the eminent statesman, Thomas Jefferson. But the question was early set at rest by the Supreme Court which, in opinions handed down by the court in 1803, and in 1810, prepared by the distinguished Chief Justice, John Marshall, in *Marbury* v. *Madison,* 5 Cranch 49, and in *Fletcher* v. *Peck,* 6 Cranch 87, held that the court had such constitutional power. These are the leading cases on the subject, and they have been since followed, not only by the United States courts, but by the state courts as well. "But," says the Chief Justice in *Fletcher* v. *Peck,* "it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

Every presumption, therefore, is in favor of the validity of the legislative enactment; and, unless the court can clearly see that the act is contrary to the fundamental law, it ought not to declare it unconstitutional. If the court entertains a doubt that is enough to determine the question in favor of the legislative act. For the rule is, that the court must be clearly and strongly convinced of its unconstitutionality before it will be justified in declaring an act void. It is a grave responsibility for the court to sit in judgment upon the acts of a co-ordinate branch of the government, and it should approach such a task with the greatest of caution, and should always be sure of its footing before pronouncing them void.

Counsel claim that the act in question violates sec. 39, Art. VI of the Constitution, which reads as follows, viz:

"The legislature, shall not pass local or special laws in any

of the following enumerated cases; that is to say, for    *    *    *
                               *    *    *    *    *

"Regulating or changing county or district affairs;    *    *    *
                         *    *    *    *    *

"The opening or conducting of any election, or designating the place of voting;    *    *    *    *

"The legislature shall provide, by general laws, for the foregoing and all other cases for which provision can be so made; and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, nor in any other case in which the courts have jurisdiction, and are competent to give the relief asked for."

The act provides for the establishment, in the town of Summersville, or near thereto, of the Nicholas County High School, and creates a board of directors which is to consist of five members. It constitutes the president and commissioners of the county court and the county superintendent of free schools, *ex officio,* members of said board, and gives them full power to act until the fifth member is elected, whose election is to take place at the next general election after the passage of the act. The board of directors is given the power to manage and control the school, employ teachers and fix their salaries, prescribe courses of study, and grant diplomas of graduation. It is also empowered to levy taxes for the purposes of raising revenue to purchase the necessary grounds, erect a school building thereon and maintain the school. The funds provided for are to be collected and disbursed by the sheriff. The act also provides that, before it shall become effective, it shall be submitted to the voters of Nicholas county for their ratification or rejection, at a special election to be ordered by the county court, notice of which is to be published for a given time before the election is had. Such special election was ordered and taken, and a majority of the votes cast in the whole county was for the high school, although a majority of the votes in some of the magisterial districts was against it.

The act does not attempt to regulate or change the county and district affairs of Nicholas county. Such county and district affairs as the legislature is inhibited from regulating or changing by a local or special act, are still carried on in that

county under the general laws applicable alike to all the counties and districts of the state. The act only creates a county high school, and provides for its support by a tax to be levied on the tax payers of the whole county; it does not work a change in, or operate as a regulation of, the general county and district affairs which already existed, but it is a creation of something in addition thereto. It makes no change in the plan provided by general law for the creation of district high schools; and, under the general law, any two or more districts of Nicholas county may still combine and establish district high schools.

It is insisted that the act violates the constitutional inhibition upon the legislature to pass a special act "where a general law would be proper and can be made applicable to the case." But must not the legislature determine for itself, before passing the law, whether or not a general law can be made applicable to the case? We think clearly that the question is chiefly one of expediency, a matter for legislative, and not judicial, judgment. Whether or not a special act is proper, for the reason that a general law can not be made applicable to the case, often depends upon facts, circumstances and local conditions which do not appear on the face of the act; and to ascertain whether such facts and conditions exist, as will justify a special act, is a preliminary question for the legislature, and the passage of the special act must be taken as an expression of the legislative opinion that they do exist. The determination of such preliminiary matters by the legislature is not reviewable by the courts; they are not judicial questions. *Indianapolis* v. *Navin,* 151 Ind. 139, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337; 36 Cyc 991. Article VI of the Constitution deals especially with matters concerning the rights, powers and duties of the legislative branch of the government; and section 39, qualifying in a manner, the legislative powers, must generally leave the matter of the propriety of a special act to the discretion of that body; and particularly must this be so with reference to such special acts as the one in question. We must, therefore, assume that the legislature ascertained such facts and conditions to exist in Nicholas county, as justified the passage of the act. We have no pewer to review that finding. *Lusher* v. *Scites,* 4 W. Va. 11; *Bobey* v. *Shepperd,* 42 W. Va. 286. The wisdom or

propriety of passing a general law, providing for county high schools in all the counties of the state, in order that a county high school might be established, in pursuance thereof, to meet the needs of Nicholas county, thereby avoiding the necessity of passing the special act in question, was a matter wholly within the legislative discretion. 36 Cyc 991. The general law now in existence has no provision for the establishment of county high schools, and the expediency of passing such a general law, when perhaps only a few counties of the state stand in need of such schools, is a question determinable alone by the legislature. "The expediency or inexpediency of an act is a question for the legislature and not for the courts." *Slack* v. *Jacobs,* 8 W. Va. 612.

Numerous special acts have been passed at various times since the adoption of the present state constitution, creating independent school districts, establishing branch schools of the state normal school at Huntington, and also special acts establishing preparatory schools for the state university. These acts are similar in nature to the one in question and can claim no higher constitutional sanction. The validity of those acts has not been questioned in any of the courts, so far as we know; and to decide the present act unconstitutional would be, in effect, to hold all those schools to be unlawfully established, and might occasion great disturbance and confusion.

The fact that the legislature submitted the act to a vote of the people of the county, was not a violation of the constitution prohibiting the passage of a special act "opening or continuing any election or designating the places of voting." The act does not provide the manner of conducting the election, or name the places of voting; presumably the election was to be conducted under the general law regulating the holding of elections, and the voting to be had at the places theretofore determined pursuant to general law.

That the general law, in force at the time this act was passed, provided for the establishment of district high schools by two or more districts in any county, the majority of the voters of each district voting in favor thereof, does not prove the act unconstitutional by showing that no necessity therefor existed. The legislature must have determined that such general law did

not meet the needs of Nicholas county. "The fact that ·the preceding legislature may have considered that a general law on the subject could be made applicable is not binding upon a succeeding legislature." 36 Cyc 991, editorial note 87. *Wilburn* v. *Raines,* 68 S. E. 993; *Indianapolis* v. *Navin, supra.*

It is urged that the act violates sec. 1, art. XII of the Constitution, which says: "The legislature shall provide, by general law, for a thorough and efficient system of free schools." The legislature has, by general law,· provided a system of free schools throughout the state. But it will be noted that it is not prohibited from augmenting, and making more efficient, the general system of free schools, by the establishment of special high schools, and graded schools, in any locality where it may think it wise to do so. The constitution does not provide for the establishment of the state university, or the state normal school at Huntington, or their respective branch schools. These are established and maintained by special legislation; and while the people of their respective locations are in a position to receive a greater benefit from them than people in other parts of the state, yet the right and power of the legislature to create them, and to provide for their maintenance by taxing the people of the whole state, has not been questioned. We think the legislature can,. with equal right, tax the county as a unit to support a county high school.

True secs. 6 and 10, Art. XII of the Constitution recognize the districts, existing at the time the constitution was adopted, as the unit, for free school purposes, but those sections also recognize the inherent power vested in the legislature to change the unit, and they do not divest it of that power. There is nothing in article XII, which is the article dealing especially with the subject of public education, prohibiting the legislature from making the county, instead of the district, the unit, if it should see fit to do so; and nothing to prevent it from retaining the district as the unit for the general or common free schools, and establishing the county as the unit for graded or high schools. The legislature could have established the high school without submitting the question to a vote of the people at all, and may have submitted it to a vote only for the reason that it thought it unwise to establish the school unless a majority of

the voters of the whole county were in favor of it. Our attention is called to sec. 10, art. XII, which reads: "No independent free school district or *organization* shall hereafter be created, except with the consent of the school district or districts out of which the same is to be created, expressed by a majority of the voters on the question." But the act in question does not create a school district *out of* any part of any school district or districts of the county. The integrity of the different districts remains intact, and the several boards of education thereof have the same territorial jurisdiction, and the same amount of property on which to lay their levy to raise revenue to run the schools of their several districts that they had before the act was passed. Hence we do not think the act is repugnant to the sections referred to in article XII of the Constitution.

It is claimed that the act, in authorizing the board of directors to levy a county tax, violates sec. 24, art VIII, of the Constitution; and also that, in constituting the county superintendent of free schools and the members of the county court members of the board of directors for the high school, it violates sec. 8, art. VII, which prohibits the legislature from appointing or electing officers. The authority to levy taxes to support the school is a necessary incident to the management and control given to the board of directors, and while the tax may be regarded as a county tax, being leviable upon all the property in the county, it is, nevertheless, no interference with the right and power conferred upon the county court by sec. 24, art. VIII, giving to that tribunal control of the police and fiscal affairs of the county, and the power to lay and disburse the county levy. The county levies there mentioned relate to the revenues to be raised for the administration of those matters and affairs over which the county courts are given supervision and control. The public education is not under the management of the county courts. But even those powers which are given by that section to the county courts are subject to "such regulations as may be prescribed by law." That section does not say, nor does it mean, that the county court is the only tribunal that can be given the power to make county levies for any purpose.

By constituting the president and commissioners of the county court and the county superintendent of free schools, *ex officio,*

71 W. Va.

members of the board of directors for the high school, the legislature did not violate the Constitution, in that it thereby elected men to office. Those men had already been elected to their respective offices; and the act only places upon them additional duties, that are not inconsistent with those which they were elected to perform. This question, we think, has been determined by the case of *Bridges* v. *Shallcross,* 6 W. Va. 562; and we do not think it is necessary to enter upon a discussion of it in this opinion. We approve the decision made in that case, and think the reasons assigned in the opinion therein rendered are applicable here. We do not think their duties as members of the board of directors are at all incompatible with their duties as members of the county court. We can not see wherein their respective duties will conflict; only a small portion of their time will necessarily be occupied in the discharge of duty in either respect. And, by increasing their duties, and providing additional compensation for the extra services to be performed, the selection of persons properly fitted to discharge the duties of the office is facilitated.

It is insisted that the act violates the constitution by increasing the salary of the members of the county court. The per diem stipend of $2.00, now allowed them by law, can scarcely be called a salary. But if it be a salary the act does not increase it, for when they meet at a board of directors, they are not then sitting as members of the county court; and the $2.00 per day allowed by the special act to each member of the board of directors for time actually employed in transacting the business of the high school, is not an increase of the per diem compensation to the members of the county court. It is not to be supposed that they would meet as a county court, and also as a board of directors, on one and the same day, and render an account for two days' services performed in one.

The decree appealed from is affirmed; and as that decree does not and could not make final disposition of the case, it being a vacation order, we are not authorized to enter a decree here dismissing plaintiffs' bill, therefore the cause is remanded for final disposition by the lower court.

*Affirmed.*