BETTY HEDRICK, ETHEL KEYSER, MARGARETTE POLK, ERNEST H. RADFORD AND HELEN HOPE SNUFFER, AS CITIZENS, RESIDENTS AND TAXPAYERS OF RALEIGH COUNTY, WEST VIRGINIA

*v.*

THE COUNTY COURT OF RALEIGH COUNTY, WEST VIRGINIA, A *Corporation,* WALTER JAMES, ITS *President,* MINOR L. SCOTT AND CHARLES T. BURDISS, *Commissioners* THEREOF, AND FRED T. STACY, *Clerk* OF SAID COUNTY COURT, AND THE BOARD OF EDUCATION OF RALEIGH COUNTY, WEST VIRGINIA, A *Corporation,* J. A. BLACKBURN, ITS *President,* GEORGE B. CHAMBERS, A. MAC CARPENTER, WARREN G. JARRELL AND VIRGIL C. COOK, *Members* OF SAID BOARD

(No. 12889)

Submitted January 14, 1970.    Decided February 10, 1970.

*James M. Henderson,* for relators.

*Thomas Canterbury,* Prosecuting Attorney, for respondents.

CALHOUN, JUDGE:

In this mandamus proceeding instituted in this Court pursuant to its original jurisdiction, Betty Hedrick, Ethel Keyser, Margarette Polk, Ernest H. Radford and Helen Hope Snuffer, citizens, residents and taxpayers of Raleigh County, as petitioners, against The County Court of Raleigh County and the individual commissioners thereof and against The Board of Education of Raleigh County and the individual members of that body, as respondents, the petitioners seek to require the county court and the board of education each to appoint two members of the board of directors of the Raleigh County Public Library pursuant to the provisions of Chapter 161, Acts of the Legislature, Regular Session, 1969, which hereafter in this opinion may be referred to merely as the act or as the statute.

The case was submitted for decision upon the mandamus petition; upon an answer and a demurrer to the petition; and upon briefs and oral argument of counsel.

No material issue of fact is presented for decision. The primary defense asserted in behalf of the respondents is that the statute in question violates the provisions of Section 39 of Article VI of the Constitution of West Virginia, the most pertinent portion of which is as follows: "* * * and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, * * *." The constitutional provision was quoted in its entirety in *Kanawha County*

*Public Library* v. *The County Court of Kanawha County,*
143 W. Va. 385, 388-89, 102 S. E.2d 712, 715.

The statute in question, the constitutionality of which
is challenged in this case, resulted from a bill which was
introduced in the legislature by Delegates Sparacino and
McManus of Raleigh County, enacted February 28, 1969,
and made effective ninety days from the date of its
passage. By its provisions, it created a public library to
be known as the Raleigh County Public Library to be
supported by the county court and the county board of
education as "a joint endeavor of the two governing
authorities" in a manner thereafter prescribed in the
statute.

The statute further provides for the creation of a
board of directors, a corporation, consisting of five mem-
bers, two of whom are to be appointed by the county
court, two by the county board of education and the
fifth by the City of Beckley, a municipality which is the
county seat of Raleigh County. From the briefs and
oral argument, it appears that the City of Beckley ap-
pointed a member of the board of directors pursuant to
the provisions of the statute and hence the city is not
a party to the mandamus proceeding.

In order to provide for the support, maintenance and
operation of the public library by the board of directors,
the county court and the board of education, respectively,
are authorized and directed by the statute, upon the
written request of the board of directors, to levy certain
property taxes as specified in the statute. Section 4 of
the statute provides: "The title to all property, both
real and personal, now devoted to public library pur-
poses by the board of education of the county of Raleigh
in connection with the operation by it of a public library
in the city of Beckley and the county of Raleigh, shall,
on July first, one thousand nine hundred sixty-nine, vest
in the board of directors of the Raleigh county public
library hereby created."

The answer to the mandamus petition states "that the citizens of Raleigh County are enjoying the facilities of the very sizeable and stable library operated by a Library Board appointed under the general statute relating to the operation of libraries," and that the respondent county court and the respondent county board of education declined to act upon the requests for appointment of members of the board of directors "because of the illegality of said Act, and the fact that Raleigh County had a legally appointed and acting Library Board."

It is not questioned that a demurrer is a proper means by which to test the sufficiency of a pleading in a proceeding in mandamus. *Wilson* v. *The County Court of Logan County,* 150 W. Va. 544, pt. 1 syl., 148 S. E.2d 353. Apparently it is conceded that, if the statute is valid, mandamus is a proper means by which to obtain the relief sought in this case. *State ex rel. Allstate Insurance Company* v. *Union Public Service District,* 151 W. Va. 207, pt. 1 syl., 151 S. E.2d 102.

The brief of counsel for the respondents asserts that the statute in question is in violation of Code, 1931, 11-8-26, as amended, which, generally speaking, provides that a local fiscal body shall not expend money or incur obligations to be paid from levies available for a subsequent fiscal year. This contention is not urged vigorously and we believe it is without substantial merit. See *Edwards* v. *Hylbert,* 146 W. Va. 1, 18-19, 118 S. E.2d 347, 356-57.

The demurrer to the mandamus petition asserts that the statute in question authorizes the City of Beckley to appoint one member of the board of directors; that the city is not required by the statute to contribute municipal funds to the support of the public library; that the result is that citizens of the City of Beckley "will have a larger voice in the operation of the library than the other citizens of Raleigh County"; and that the statute is in this respect violative of the portion of the Fourteenth Amendment of the Constitution of the United States which pro-

vides that no state shall deny to "any person" within its jurisdiction the equal protection of the laws. We are of the opinion that this contention has not been urged confidently by counsel for the respondents, either by brief or by oral argument, and that it lacks substantial merit. Citizens owning property within the city are required to pay property taxes levied both by the county court and by the county board of education, as well as by the municipality. Four of the five members of the board of directors are appointed on a countywide basis. The statute requires that the facilities of the library shall be available to members of the general public, irrespective of any place of residence within the county. We are of the opinion that the statute does not deny equal protection to any citizen of the county within the meaning of provisions of the Fourteenth Amendment.

Counsel for the parties, by brief and oral argument, agree that the paramount question presented to the Court for decision is whether the statute is a special act of such a character as to be violative of the constitutional provision previously referred to in this opinion. We do not want to be understood as not having given careful consideration to other questions presented for decision by the answer and the demurrer. We believe we are warranted in the conclusion that none of such other contentions can be regarded as determinative of the case presented for decision. Therefore, we now proceed to a consideration of the question whether the statute is a "special act" of such a character as to be in that respect unconstitutional.

In support of the constitutionality of the statute involved in this case, counsel for the petitioners confidently relies on this Court's unanimous decision in *Kanawha County Public Library* v. *The County Court of Kanawha County*, 143 W. Va. 385, 102 S. E.2d 712, in which it was held that a legislative act providing for the creation and operation of the Kanawha County Public Library was not a special act or a special law in violation of the con-

stitutional provision in question. In that case (143 W. Va. 385, 390, 102 S. E.2d 712, 716), the Court stated: "That this legislation is local in its nature cannot be challenged. Its provisions are applicable to one institution, a public library located in the City of Charleston, Kanawha County. That alone is not sufficient to make it invalid. This Court cannot concern itself with the wisdom of this legislation, but only with the question of whether the Legislature had the authority under the Constitution of this State to pass such an act." In the same case (143 W. Va. 385, 391, 102 S. E.2d 712, 716), the Court stated: "Certainly it could not be seriously contended that a general law would be proper to attain the results sought by the Legislature in requiring the respondent, the Board of Education and the City of Charleston to make certain contributions for the support of a public library which has been in existence for more than fifty years. In many of the counties, there is no public library."

Parenthetically and as an interesting bit of history, we note that *Brown* v. *The Board of Education of Charleston Independent School District*, 106 W. Va. 476, 146 S. E. 389, involved the question of the right to deny to any person, on account of color, race or previous condition of servitude access to the facilities of "the Charleston Public Library established and maintained in the Capitol Annex Building".

In the present case, counsel for the respondents emphasize that there is in existence a general law or statute embodied in Article 1, Chapter 10, Code, 1931, as amended, which provides for the creation and maintenance of public libraries. Section 2 of that chapter is in part as follows: "A governing authority either by itself or in cooperation with one or more other such governing authorities, shall have the power to establish, equip and maintain a public library, or to take over, maintain or support any public library already established." Section 1 contains the following language: "The term 'governing

authority' shall be construed to mean county court, county board of education or the governing body of any municipality." The general law or general statute was in existence in substantially the same language when the *Kanawha County Public Library* case was decided in 1958. See Article 1, Chapter 10, Code, 1931, as amended by Chapter 103, Acts of the Legislature, Regular Session, 1945.

*State ex rel. Greenbrier County Airport Authority* v. *Hanna,* 151 W. Va. 479, 153 S. E.2d 284, involved a legislative enactment authorizing the County Court of Greenbrier County to create an airport authority with power to construct, operate and maintain an airport in that county. The Court held in that case that the statute constituted a special law or special act in violation of the constitutional provision involved in the instant case. The brief of counsel for the respondents emphasizes that the decision in that case states a rule which is at variance with the decision in the *Kanawha County Library* case; that this rule should be applied to the instant case; and that the statute in question in the present case should accordingly be held to be a special law or special act in violation of the pertinent constitutional provision. On the contrary, the Court's opinion in the *Greenbrier County Airport Authority* case (151 W. Va. 479, 493-94, 153 S. E.2d 284, 292), distinguishes and reaffirms the correctness of the decision in the *Kanawha County Library* case. Two judges of the Court joined in a dissenting opinion in the *Greenbrier County Airport Authority* case, not on the ground that it was at variance with the decision in the *Kanawha County Library* case, but rather on the ground that it was at variance with the decision in *Meisel* v. *Tri-State Airport Authority,* 135 W. Va. 528, 64 S. E.2d 32, in which the Court held that the statute involved in that case was not a special act or special law in violation of the constitutional provision.

An interesting student comment on the *Greenbrier County Airport Authority* case, authored by James Edward Seibert, appears in 70 W. Va. L. Rev. 114. In com-

menting upon the question of the validity of a special act when a general law already exists, the author of the article made the following summary of his views: "It appears that a special act will and should be declared void in most situations if there is an existing general law dealing with the subject. However, there may be an exception when the circumstances of a particular situation are unique, and there remains no other way to accomplish a proper exercise of legislative power."

The "exception" to which the author refers in the language quoted immediately above is, we believe, quite implicit in the language of the constitutional inhibition. The statement in the Constitution that "in no case shall a special act be passed" is qualified by the language immediately ensuing as follows: "* * * where a general law would be proper, and can be made applicable to the case, * * *." Initially it is a prerogative of the legislature to determine whether a general law would be proper and can be made applicable to the case. In making this initial determination, the legislature is both authorized and required to consider the circumstances of each situation in exercising its legislative prerogative in this area.

The general statute relating to the establishment and maintenance of public libraries is permissive in character. The general law does not compel any "governing authority either by itself or in cooperation with one or more other such governing authorities" to establish a public library. If two or more governing authorities voluntarily undertake to establish a public library, the general law does not specify where such library shall be located or whether an existing library owned and maintained by one of such governing bodies shall be adopted or displaced. The general law does not clearly state in what proportions two or more governing authorities shall contribute funds to the construction, operation and maintenance of a jointly-sponsored public library. Quite likely there is not an appreciable number of counties of the

state in which the county boards of education operate and maintain public libraries at the county seats of such counties.

This Court has, we believe, zealously upheld and carefully applied the separation of powers provisions of Article V, of the Constitution of West Virginia. More specifically, this Court has consistently recognized that the powers of the legislature in its field are almost plenary and that this Court will not declare an act of the legislature to be unconstitutional unless in that respect the invalidity of the act appears beyond reasonable doubt. *State ex rel. West Virginia Housing Development Fund v. Copenhaver*, 153 W. Va. 636, 171 S. E.2d 545 decided December 9, 1969.

The legislative prerogative of determining whether a "general law would be proper, and can be made applicable to the case," has been consistently recognized and safeguarded by this Court. In *State ex rel. The County Court of Cabell County v. Battle,* 147 W. Va. 841, 848, 131 S. E.2d 730, 735, the Court stated: "The legislature is generally the judge of such matters. * * * In such cases, if a reasonable necessity for a special or local law is apparent or is indicated in the statute, it will be presumed that the legislature properly considered the matter, and the courts will not disturb such legislation." Following is the eighth point of the syllabus of *Woodall v. Darst,* 71 W. Va. 350, 77 S. E. 264: "Whether a special act or a general law is proper, is generally a question for legislative determination; and the court will not hold a special act void, as contravening sec. 39, Art. VI. of the State Constitution, unless it clearly appears that a general law would have accomplished the legislative purpose as well." To the same effect see *State ex rel. Appalachian Power Company v. Gainer,* 149 W. Va. 740, 757, 143 S. E.2d 351, 363; *Truax-Traer Coal Company v. Compensation Commissioner,* 123 W. Va. 621, 626-27, 17 S. E. 2d 330, 334; *State ex rel. Rickey v. Sims,* 122 W. Va. 29, 32, 7 S. E.2d 54, 56; *Brozka v. County Court of Brooke County,* 111 W. Va. 191, 195, 160 S. E. 914, 916.

It was previously stated by this Court that a determination whether "a general law would be proper, and can be made applicable to the case" involves a legislative function not reviewable by the courts. *Herold* v. *McQueen,* 71 W. Va. 43, 75 S. E. 313. This rule is adhered to in many jurisdictions. 16 C.J.S., Constitutional Law, Section 153, page 774; 82 C.J.S., Statutes, Section 157, page 264; 50 Am. Jur., Statutes, Section 58, page 79. While it is now clear that the action of the legislature in such cases is reviewable by the courts in this state, the Court in the *Herold* case (71 W. Va. 43, 47, 75 S. E. 313, 315), stated a general principle of law as follows: "But must not the legislature determine for itself, before passing the law, whether or not a general law can be made applicable to the case? * * * Whether or not a special act is proper, for the reason that a general law can not be made applicable to the case, often depends upon facts, circumstances and local conditions which do not appear on the face of the act; and to ascertain whether such facts and conditions exist, as will justify a special act, is a preliminary question for the legislature, and the passage of the special act must be taken as an expression of the legislative opinion that they do exist. * * * Article VI of the Constitution deals especially with matters concerning the rights, powers and duties of the legislative branch of the government; and section 39, qualifying in a manner, the legislative powers, must generally leave the matter of the propriety of a special act to the discretion of that body; * * *."

It is difficult, if not impossible, to state a rule of general application relative to the authority of legislatures to enact special acts because of the vast diversity of the language of pertinent constitutional provisions among the states of the nation. It is also difficult to formulate a general rule in this area by which the courts of this state must be guided, because of the varying factual situations involved in cases of this character presented for decision from time to time. Perhaps the nearest possible approach to a general rule applicable to cases involving

the constitutional provision under consideration in this case is that, in a great measure, a proper decision in any case of this character depends upon the peculiar facts and the nature of the act involved in the case.

For reasons previously stated in this opinion, we cannot say that the statute in question is unconstitutional or otherwise invalid for any of the reasons asserted in behalf of the respondents; and accordingly the writ of mandamus as prayed for is awarded.

*Writ awarded.*