575 S.E.2d 222

**Carol GALLANT and Jim Whipple, Petitioners Below, Appellants,**

v.

**COUNTY COMMISSION OF JEFFER-SON COUNTY, West Virginia, Respondent Below, Appellee.**

No. 30316.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2002.

Decided Nov. 27, 2002.

Concurring Opinion of Justice McGraw Jan. 6, 2003.

Thomas R. Michael, Michael & Kupec, Clarksburg, for the Appellants.

Michael D. Thompson, Prosecuting Attorney for Jefferson County, Charles Town, for the Appellee.

Grant Crandall, Fairfax, VA, for Amici Curiae, United Mine Workers of America.

Jack C. McClung, Charleston, for Amicus Curiae, West Virginia Association of Counties.

Robert D. Williams, Assistant Attorney General, Charleston, for Amicus Curiae,

West Virginia Courthouse Facilities Improvement Authority.

## PER CURIAM.

This is an appeal by Carol Gallant and Jim Whipple (hereinafter "Appellants") from an order of the Circuit Court of Jefferson County dissolving a temporary injunction which had previously issued prohibiting the demolition of the Jefferson County Jail and dismissing their case with prejudice. Upon thorough evaluation of the record and the arguments of counsel, we reverse the decision of the lower court.

### I. Facts

In November 2000, the Jefferson County Commission (hereinafter "Commission") decided to demolish the former Jefferson County Jail (hereinafter "jail").[1] In December 2000, the Appellants instituted this action seeking an injunction to prohibit the Commission from demolishing the jail without first complying with the review requirements for historical structures enunciated in West Virginia Code § 29-1-8 (2001), requiring certain historic review procedures to be followed if a protected property is subject to an undertaking that would result in changes to the character of the property where the property is "permitted, funded, licensed or otherwise

assisted, in whole or in part, by the state." W. Va.Code § 29-1-8(a). West Virginia Code of State Regulations Title 82, Series 2, Section 5 delineates certain particular requirements for that review, as required by the statute.[2]

On January 17, 2001, the lower court issued a temporary injunction enjoining the Commission from demolishing the jail, reasoning that the statutory review must be undertaken since the Commission is a political subdivision of the State and funds used from the county's general revenue fund to demolish the county jail would constitute state funds for purposes of the statute since the county's general revenue fund would contain State funds that were deposited under state tax statutes.

On April 14, 2001, the West Virginia Legislature amended the statute to add the following language to West Virginia Code § 29-1-8(d): "Provided, That solely for the purposes of this section, funded, in whole or in part, by the state shall not include funding from any county's general revenue fund regardless of whether or not state funds are commingled with the county's general revenue fund[.]" The amendment was made effective from passage.[3]

---

1. The building at issue in this matter was utilized as the Jefferson County Jail from approximately 1919 to 1998. It ceased operating as a jail in approximately 1998 when the Eastern Regional Jail was opened. The building is located behind the existing courthouse in the downtown Charles Town Historical District. The jail is listed on the *National Register of Historic Places as a* contributing resource of the downtown Charles Town Historic District. The Commission decided to demolish the jail to provide a suitable building site to build a new courthouse annex to be located immediately behind the existing courthouse. The Commission asserts that only county property tax revenue would be utilized to demolish the jail. However, the evidence reflects that approximately $35,000 in coal severance tax revenue from the State and $5,700 in gas and oil severance tax revenue from the State was commingled with the approximate $5,076,005 in county tax revenues.

2. Once the review process is invoked, the regulations provide for a determination by the Division of Culture and History regarding the effects of the proposed undertaking upon the historic property. If effects will be adverse, the regulations

provide for an evaluation of alternatives or mitigation measures. 82 W. Va.C.S.R. § 2-5.4.

3. Including this amendment, West Virginia Code § 29-1-8(a) and (d) provide as follows:

(a) The purposes and duties of the historic preservation section are to locate, survey, investigate, register, identify, preserve, protect, restore and recommend to the commissioner for acquisition historic, architectural, archaeological and cultural sites, structures and objects worthy of preservation, including human skeletal remains, graves, grave artifacts and grave markers, relating to the state of West Virginia and the territory included therein from the earliest times to the present upon its own initiative or in cooperation with any private or public society, organization or agency; to conduct a continuing survey and study throughout the state to develop a state plan to determine the needs and priorities for the preservation, restoration or development of the sites, structures and objects; to direct, protect, excavate, preserve, study or develop the sites and structures; to review all undertakings permitted, funded, licensed or otherwise assisted, in whole or in part, by the state for the pur-

Based upon the alteration in the statute, the Commission filed a May 9, 2001, motion to dissolve the temporary injunction, arguing that the amendment exempted all county funds from the review requirements. The Appellants objected, arguing that the amendment could not be retroactively applied to a case pending in circuit court and that the amendment constituted "special legislation" prohibited by West Virginia Constitution Article IV, section nine because it exempted only counties from its requirements.

On June 11, 2001, the lower court granted the Commission's motion and dissolved the injunction, reasoning that the amendment clarified that the review procedures did not apply to the Commission in this matter. The lower court also held that the amendment was not illegal special legislation because it applied to all counties equally.

By order dated July 5, 2001, this Court stayed the lower court's order dissolving the temporary injunction pending decision on appeal. The appeal was granted on January 23, 2002. The Appellants contend that the amendment cannot be applied retroactively and that the amendment also constitutes illegal special legislation. The Commission has also asserted a cross-assignment of error alleging that the lower court erroneously concluded that the monies to be utilized in the demolition were state funds.[4]

## II. Standard of Review

■■■ This standard of review applicable to a case of this nature has been consistently explained as follows: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syl. Pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996). Even when disguised as questions of fact, underlying issues of law must be reviewed *de novo,* as this Court explained in syllabus point one of *State ex*

---

poses of furthering the duties of the section; to carry out the duties and responsibilities enumerated in the National Historic Preservation Act of 1966 [16 USCS § 470 et seq.], as amended, as they pertain to the duties of the section; to develop and maintain a West Virginia state register of historic places for use as a planning tool for state and local government; to cooperate with state and federal agencies in archaeological work; to issue permits for the excavation or removal of human skeletal remains, grave artifacts and grave markers, archaeological and prehistoric and historic features under the provisions of section eight-a [§ 29–1–8a] of this article; and to perform any other duties as may be assigned to the section by the commissioner.

. . . .

(d) The director shall promulgate rules with the approval of the archives and history commission and in accordance with chapter twenty-nine-a [§§ 29A–1–1 et seq.] of this code concerning: (1) The professional policies and functions of the historic preservation section; (2) the review of and, when required, issuance of permits for all undertakings permitted, funded, licensed or otherwise assisted, in whole or in part, by the state as indicated in subsection (a) of this section, in order to carry out the duties and responsibilities of the section: *Provided, That solely for the purposes of this section, funded, in whole or in part, by the State shall not include funding from any county's general revenue fund regardless of whether or not state funds are commingled with the county's general revenue fund;* (3) the establish-

ment and maintenance of a West Virginia state register of historic places, including the criteria for eligibility of buildings, structures, sites, districts and objects for the state register and procedures for nominations to the state register and protection of nominated and listed properties; (4) the review of historic structures in accordance with compliance alternatives and other provisions in any state fire regulation, and shall coordinate standards with the appropriate regulatory officials regarding their application; (5) review of historic structures in conjunction with existing state or local building codes and shall coordinate standards with the appropriate regulatory officials for their application; and (6) any other rules as may be considered necessary to effectuate the purposes of this article.

W. Va.Code § 29–1–8(a) and (d) (emphasis provided); *see also* Megan M. Carpenter, *Preserving a Place for the Past in Our Future: A Survey of Historic Preservation in West Virginia.,* 100 W. Va. L.Rev. 423 (1997).

**4.** On May 29, 2001, this Court requested the parties to brief the issue of applicability of West Virginia Code § 7–3–3a (1978) (Repl.Vol.2000), regarding the ability of the county commission to call a local option election for the purpose of determining the will of the voters regarding real property. While the parties recognized the relevance of that section, they maintain that the issues raised in this appeal involving the statutory historical review procedures still require resolution.

*rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996), as follows:

> Generally, findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo.* However, ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed *de novo.* The sufficiency of the information presented at trial to support a finding that a constitutional predicate has been satisfied presents a question of law.

## III. Discussion

### A. Retroactive Application of the Statute

■■■ In syllabus point two of *Public Citizen, Inc. v. First National Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996), this Court explained as follows:

> A statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive application.

West Virginia Code § 2–2–10(bb) (1998) (Repl.Vol.2002) constitutes the Legislature's rule for the application of a statute and provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective[.]" The Appellants contend that the lower court erred in applying the statutory amendment retroactively to this case in which a completed event, the determination to demolish, had already occurred. In response, the Appellee insists that the amendment may be applied to pending litigation since it merely clarifies the operation of the existing statute.

This Court resolved a comparable dilemma in *Public Citizen* and explained that "[w]hen a pending case implicates a state statute enacted after the events that form the basis of the suit, 'the court's first task is to determine whether [the West Virginia Legisla-

ture] has expressly prescribed the statute's proper reach.'" 198 W.Va. at 334, 480 S.E.2d at 543, quoting *Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483 (1994) (holding that 1991 amendment to Civil Rights Act, creating right to recover damages, did not apply to case pending when amendment was enacted). In *Public Citizen,* this Court utilized a two-pronged analysis and determined that an amendment to the Uniform Commercial Code statute regarding payment of instruments with joint payees could not be applied retroactively. First, the Court asserted that a determination must be made regarding whether the new provision would, "if applied in a pending case, attach a new legal consequence to a completed event." 198 W.Va. at 335, 480 S.E.2d at 544. Second, such new provision would not be applied "unless the Legislature has made clear its intention that it shall apply." *Id.,* 480 S.E.2d at 544. This Court explained that such examination requires deliberation of "a principle deeply rooted in our jurisprudence that absent some clear signal from the Legislature, a statute will not apply retroactively." *Id.,* 480 S.E.2d at 544. We further explained: "In unbroken precedent, this Court has stated '[a] statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute.'" *Id.,* 480 S.E.2d at 544, quoting Syl. Pt. 3, *Shanholtz v. Monongahela Power Co.,* 165 W.Va. 305, 270 S.E.2d 178 (1980) (holding that prohibition of discrimination statute applied prospectively only).[5]

Application of the statutory amendment to the present case will undeniably "attach a new legal consequence to a completed event," to the extent that it will eliminate the historic review process to which this demolition determination would otherwise have been entitled. 198 W.Va. at 335, 480 S.E.2d at 544. *The decision to demolish the jail was made* prior to the amendment of the statute. Thus, at the time of that pivotal decision, the prior version of the statute applied. Retro-

---

**5.** In *State ex rel. Glauser v. Board of Education,* 173 W.Va. 481, 318 S.E.2d 424 (1984), this Court held that a statutory amendment requiring notice and hearing prior to employee transfer or reassignment did not apply retroactively.

active application of the amended version of the statute would entirely abrogate the Division of Culture and History review process. Thus, based upon the unique facts of this matter and the absence of any indication by the West Virginia Legislature that the amendment should operate retroactively,[6] this Court concludes that retroactive application is improper under the clearly articulated standards of *Public Citizen* and its progeny. As this Court stated in *Public Citizen*, "[b]ecause the amendments, if given retroactive effect, would attach a new legal consequence to the transaction that occurred before the amendments came into existence, this legislative silence, coupled with the presumption against retroactivity, leads us to hold that the new amendments do not apply to this case." 198 W.Va. at 335, 480 S.E.2d at 544.

### B. Special Legislation

We premise our ultimate conclusion in this case upon the fact that the amended statute should not be retroactively applied. With regard to the Appellants' ancillary contention that the amendment constitutes special legislation, we decline this invitation to wholly invalidate the statutory amendment. Article VI, Section 39 of the West Virginia Constitution states, in pertinent part, that "in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case...." The Appellants contend that the amendment constitutes special legislation since it applies only to county commissions and not to other political subdivisions within this state.

Our review of the applicable precedents, however, persuades us that the constitutional prohibition against special legislation does not preclude the legislature from enacting legislation designed to affect specific classes of political subdivisions, where, as here, each entity within that particular class of political subdivision is dealt with equally. In the first instance, the question of whether a special or general act is appropriate is for legislative determination. *Hedrick v. County Court of Raleigh County*, 153 W.Va. 660, 172 S.E.2d 312 (1970) (holding that statute creating public library to be supported by county court and county board of education did not violate constitutional provisions regarding special legislation). In syllabus point one of *Hedrick*, this Court explained:

"Whether a special act or a general law is proper, is generally a question for legislative determination; and the court will not hold a special act void, as contravening sec. 39, Art. VI. of the State Constitution, unless it clearly appears that a general law would have accomplished the legislative purpose as well." Point 8 Syllabus, *Woodall v. Darst*, 71 W.Va. 350 [77 S.E. 264, 80 S.E. 367].

This Court also explained in *Hedrick* that such "legislature prerogative ... has been consistently recognized and safeguarded by this Court." 153 W.Va. at 668, 172 S.E.2d at 316.[7]

The *Hedrick* Court observed that "[i]t is also difficult to formulate a general rule in this area by which the courts of this state must be guided, because of the varying factual situations involved in cases of this character presented for decision from time to time." 153 W.Va. at 669, 172 S.E.2d at 317. The "nearest possible approach to a general rule" was stated to be that "in a great measure, a proper decision in any case of this character depends upon the peculiar facts and the nature of the act involved in the case." *Id.* at 669–70, 172 S.E.2d at 317.

In *State ex rel. County Court of Marion County v. Demus*, 148 W.Va. 398,

---

6. The bill containing the amendment was made effective from its date of passage, April 14, 2001.

7. In *State ex rel. County Court of Cabell County v. Battle*, 147 W.Va. 841, 131 S.E.2d 730 (1963), this Court stated: "The legislature is generally the judge of such matters.... In such cases, if a reasonable necessity for a special or local law is apparent or is indicated in the statute, it will be presumed that the legislature properly considered the matter, and the courts will not disturb such legislation." 147 W.Va. at 848–49, 131 S.E.2d at 735; *see also State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 757, 143 S.E.2d 351, 363 (1965); *Truax–Traer Coal Co. v. Compensation Commissioner*, 123 W.Va. 621, 626–27, 17 S.E.2d 330, 334 (1941); *State ex rel. Rickey v. Sims*, 122 W.Va. 29, 32, 7 S.E.2d 54, 56 (1940); *Brozka v. County Court of Brooke County*, 111 W.Va. 191, 195, 160 S.E. 914, 916 (1931). *Herold v. McQueen*, 71 W.Va. 43, 75 S.E. 313 (1912).

135 S.E.2d 352 (1964), this Court resolved that the determination is to be left to the legislature unless the Legislature's alleged disregard of the section is "clear and palpable." 148 W.Va. at 402, 135 S.E.2d at 356, citing *Brozka v. County Court of Brooke County*, 111 W.Va. 191, 160 S.E. 914 (1931). In syllabus point seven of *Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965), this Court explained:

In due recognition of fundamental principles relating to the separation of powers among the legislative, executive and judicial branches of government, courts recognize the power of the legislature to make reasonable classifications for legislative purposes. Courts are bound by a presumption that legislative classifications are reasonable, proper and based on a sound exercise of the legislative prerogative. If a statute enacted by the legislature applies throughout the state and to all persons, entities or things within a class, and if such classification is not arbitrary or unreasonable, the statute must be regarded as general rather than special. In making classifications for legislative purposes, a wide range of discretion must be conceded by the courts to the legislature. In any case of doubt, courts must favor a construction of a statute which will result in its being regarded as general rather than special. A statute must be regarded as general rather than special when it operates uniformly on all persons, entities or things of a class. A law which operates uniformly upon all persons, entities or things as a class is a general law; while a law which operates differently as to particular persons, entities or things within a class is a special law.

This Court has also explained that the question may be phrased in terms of whether the classification is reasonably related to the purpose of the legislation. In syllabus point five of *Atchinson v. Erwin*, 172 W.Va. 8, 302 S.E.2d 78 (1983), this Court explained:

"A statute is general when it operates uniformly on all persons and things of a class and such classification is natural, reasonable and appropriate to the purpose sought to be accomplished." Syllabus

Point 2, *State ex rel. Taxpayers Protective Association of Raleigh County v. Hanks*, 157 W.Va. 350, 201 S.E.2d 304 (1973).

In syllabus point seven of *State ex rel. Heck's, Inc. v. Gates*, 149 W.Va. 421, 141 S.E.2d 369 (1965), this Court resolved:

The constitutional requirement that a law be general does not imply that it must be uniform in its operation and effect in the full sense of its terms. If a law operates alike on all persons and property similarly situated, it is not subject to the objection of special legislation or class legislation and does not violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

 This Court's evaluation of the legislative action under scrutiny must also be guided by the general rule that doubt concerning constitutionality of legislative enactments should be resolved in favor of legitimacy. Construction as a general law is favored, and the Legislature's determination will be accepted where the class is rational and not arbitrary or unreasonable. This rule is stated in syllabus point eight of *Gates*, as follows: "The well settled general rule is that in cases of doubt the intent of the Legislature not to exceed its constitutional powers is to be presumed and the courts are required to favor the construction which would consider a statute to be a general law." 149 W.Va. at 423, 141 S.E.2d at 373.

 With regard to the specific classification chosen by the Legislature in this case— that of counties—to the exclusion of other subdivisions, we note that history sanctions such a classification, especially by two readily apparent means. First, our state constitution addresses counties in its Article IX as one distinctly separate class of political subdivision. Likewise, the constitution addresses municipalities as a distinctly separate class in Article VI, § 39(a), in a substantially different manner. Second, in forming the overall statutory scheme for the governance of the various political subdivision of the state, the Legislature has consistently addressed

counties as a separate and distinct class,[8] municipalities as another separate and distinct class,[9] and other political subdivisions in separately defined distinct classes.[10] The Legislature has provided separate sets of powers, limitations and responsibilities for each of the various classes of political subdivisions, in accordance with the constitutional scheme and the Legislature's judgment of what is appropriate for each such class. While judicial review of those judgments is clearly available where arbitrary and capricious choices are alleged, it is readily apparent that an absolute minefield would be created in both the Legislature and the courts were it to be determined that the mere fact that the Legislature applied a given statute to counties without also making it applicable to municipalities or other subdivisions violated the proscription against special legislation, per se. We decline that invitation. In the absence of a showing that the exclusion of other political subdivision from the operation of the statute at issue constitutes a "clear and palpable" disregard for the proscription against special legislation, the Legislature's choice is presumptively appropriate. *See Demus*, 148 W.Va. at 402, 135 S.E.2d at 356. In this case there simply is no showing that the Legislature's choice was arbitrary or capricious. On the contrary, the choice, in keeping with the history of legislation relating to political subdivisions, addresses a long-recognized separate class, a palpably rational class, long the subject of legislation separate and apart from other political subdivisions. We agree with the Legislature's determination that the statute at issue is a general one, not prohibited by Article VI, § 39 of the Constitution.

C. Lower Court's Finding of State Money

The County Commission has also asserted a cross-assignment of error contending that the lower court erred in its holding regarding the commingled State and county funds to be utilized in the demolition of the jail. On this issue, the January 17, 2001, lower court order provides as follows:

> Code 29–1–8 and its attendant regulations provide, in pertinent part, that review by the Division of Culture and History is mandated when a protected property is subject to an undertaking that would result in changes in the character of the property (and certainly demolition meets this criterion) and is "... funded ... or otherwise assisted, *in whole or in part*, by the state." The Respondent appears to concede that the jail building is located within an historic district and is listed therein as a "contributing element" and, thus, is a qualifying property, for the mandated review. However, Respondent County Commission seeks to avoid the effect of that law by arguing that notwithstanding the fact that this demolition is to be paid for out of the County's general revenue fund into which is deposited and commingled not only property tax proceeds, but also oil and gas severance tax proceeds, that the demolition is, nevertheless, not being paid for *in whole or in part* by state funds. This Court simply cannot agree. The County Commission is a political subdivision of West Virginia state government. It is manifest that the clear import of this statute is that whenever public funds raised by state taxing authorities are being utilized to demolish an historic structure in West Virginia, that the historic review process must be undertaken *a priori*.

The Commission contends that this holding suggests that the lower court believed that all county revenues are State funds simply by virtue of the fact that counties are political subdivisions of the State. Our reading of the lower court's rationale does not convince us that the lower court concluded that all county funds were automatically state funds. Rather, the order and the underlying record reflects that the lower court thoroughly scrutinized issues surrounding the origin of funds

---

8. See *generally*, W.Va.Code §§ 7–1–1 to –3–18 (Repl.Vol.2000).

9. See *generally*, W.Va.Code §§ 8–1–1 to –36–1 (Repl.Vol.1998).

10. See *generally*, W. Va.Code §§ 18–5–1 to –42 (Repl.Vol.1999) and W. Va.Code §§ 16–13A–1 to –25 (Repl.Vol.2001), the legislative schemes for county boards of education and public service districts, respectively.

to be utilized on the project and took evidence regarding the source of funds. In this Court's examination on appeal, we must be cognizant of the reality that this is a factual issue examining source of funding, subject to a clearly erroneous standard of review. Finding no clear error in the lower court's holding regarding commingling of state and county funds, we do not disturb that decision.

In conclusion, the decision of the lower court is reversed to the extent that it sanctioned retroactive application of the statutory amendment to the demolition decision. The Commission's decision to demolish the jail is entitled to statutory review under the version of the statute applicable at the time the demolition decision was made. The lower court's determination that there is no violation of the prohibition against special legislation is affirmed, and the lower court's conclusions regarding sources of funding are affirmed.

Affirmed in part, reversed in part.

McGRAW, Justice, concurring.

(Filed Jan. 6, 2003)

I agree with the majority that this dispute over the Jefferson County Jail should be resolved under the old statute. I also agree that the change made by the Legislature in the statute is not in excess of the Legislature's authority. However, I write separately to express my concern that the Legislature may have, unintentionally, gutted the historic preservation statute, at least where county commissions are involved. The applicable statute states that:

> The purposes and duties of the historic preservation section are to locate, survey, investigate, register, identify, preserve, protect, restore and recommend to the commissioner for acquisition historic, architectural, archaeological and cultural sites, structures and objects worthy of preservation. . . .

W. Va.Code § 29–1–8 (2001).

Our state efforts toward historic preservation are based largely upon the National Historic Preservation Act of 1966. Both programs exist because of a recognition that our historic structures and sites have a value to the public that can be hard to measure, in spite of the fact that it is often more expensive or difficult to preserve properties of historical significance than it is to ignore or destroy them. In this case, as is common in such struggles, those who favor historic preservation need all the help they can get. Here we see the efforts of a small, dedicated group of people with scant resources who are making an effort to preserve important sites and buildings. They are pitted against a powerful foe, in this case the county government, with paid staff and plenty of money for legal help. *See, American Tower Corp. v. Common Council of City of Beckley,* 210 W.Va. 345, 557 S.E.2d 752 (2001), McGraw, J., dissenting.

If that weren't enough, now the preservationists are faced with the overwhelming power of the Legislature. The great and unintentional mischief this change in the statute threatens is a potential attack on the historic courthouses in every county in this state. I do not fault the county commission for looking for a solution to its space problem—that is part of its duty to operate an effective government for its citizens. However, the amicus brief supplied by The Courthouse Facilities Improvement Authority demonstrates nicely the potential dangers faced by all our historic courthouses.

The Legislature has empowered the authority to review the needs for the courthouse in every county. But now that power is apparently unchecked by any need to consider the historic impact of any changes it might make to our historic buildings. Surely the Legislature did not intend to put in jeopardy each and every Courthouse in this state. In many of our counties, the Courthouse is one of the finest structures in the county. In spite of sometimes limited resources, remote locations, or other obstacles, our ancestors managed to construct numerous fine examples of many styles of architecture, including Greek Revival, Beaux Arts, Art Moderne, Neo–Classical Revival, Colonial Revival, Art Deco, and Romanesque Revival. These buildings reflect an ancient tradition of making public buildings the architectural center of the community, a tradition strengthened in this state by Thomas Jefferson, who based

many of his designs for public buildings on Roman and Greek structures.

No doubt it would have been cheaper and easier for our ancestors to build simple buildings bereft of ornamentation or landscaping. It is lucky for us they did not; it is incumbent upon us to insure that future generations may still appreciate the beauty and history of these many fine structures. As one scholar has commented:

> Efforts to preserve the heritage of West Virginia are increasing as a whole. However, individual battles continue to be waged in communities everyday. Like the former National Bank of West Virginia building in downtown Morgantown, historic buildings continue to be lost needlessly.

Megan M. Carpenter, Preserving a Place for the Past in Our Future: A Survey of Historic Preservation in West Virginia., 100 W. Va. L.Rev. 423, 466 (1997). Because I fear that the changes made to the statute may put our historic public buildings at risk, I must respectfully concur to the majority opinion.